## In re LEE WAY HOLDING COMPANY, Debtor.

### No. C2–87–1283.

United States District Court, S.D. Ohio, E.D.

Nov. 29, 1988.

Opinion on Reconsideration Jan. 11, 1989.

Opinion and Order Granting Attorney Fees March 16, 1989.

Joel H. Mirman, Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, and Howard L. Sokolsky, Robert S. Balantzow, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for appellants.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, Chapter 11 Trustee.

Donald R. Harris, Jenner & Block, Chicago, Ill., for trustee.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court on Appellants' (Banner Industries, Inc. and Plymouth Leasing Company) motion for leave to appeal, and appeals from, the Bankruptcy Judge's designations of Frederick M. Luper as Chapter 11 Trustee and of his law firm (Luper, Wolinetz, Sheriff & Neidenthal) as counsel to the trustee.

### I. BACKGROUND

The underlying case has been described as one of the largest and most complex Chapter 11 proceedings in this district. It is clearly one of the most contentious. Appellants Banner Industries and Plymouth Leasing are creditors of Lee Way Holding Company, which was a debtor in possession under § 1101(1) and § 1107 until Luper, upon motion, was appointed as Chapter 11 Trustee on January 22, 1987. On February 3, 1987, Luper moved to have his law firm appointed as counsel to the Trustee. With the application, Luper submitted the affidavit of a partner in his firm, detailing the firm's prior representation of 15 of the creditors in collection matters and in filing

proofs of claims (aggregating about $65,-000) for some. On February 13, 1987, appellants challenged the appointment and application on grounds that Luper and his firm were not "disinterested" persons because of prior representations of creditors and others, and urged disqualification of appellees because the firm failed to disclose, *inter alia* that it had represented Frito–Lay, Inc. in two collection cases (against local grocers). Luper says that at the time of the filing of the application and affidavit, he (and his firm members) did not know that Frito–Lay was a wholly owned subsidiary of Pepsico, a major creditor of Lee Way. The claims register lists Pepsico ($10 million) *and* Frito–Lay ($7.1 million), but Luper admits that his firm "made no search of these 6,000 claims," apparently concluding that it would have been unduly burdensome since they were not alphabetized.

The Bankruptcy Judge held that Luper and his firm were "disinterested" persons within the meaning of 11 U.S.C. § 101(13), as applicable to § 327(a) and § 1104(c), relating to qualifications of trustees and their counsel. Subsequently, in rendering a decision denying appellants' motion to disqualify the trustee and counsel, the Bankruptcy Judge said that, even if Luper and his firm had disclosed the Pepsico/Frito–Lay representation, he would still have approved their appointment. Banner and Plymouth Leasing appeal, seeking to reverse the Bankruptcy Judge's (1) January 22, 1987 appointment of Luper as Trustee and (2) approval of the Luper firm as counsel to the Trustee, both *nunc pro tunc.*

Because "the facts and legal arguments [have been] adequately presented in the briefs and record" as supplemented by both parties' responses to written inquiries by the Court, and because "the decisional process would not be significantly aided by oral argument," the Court concludes that oral argument is unnecessary. Bankr.Rule 8012.

## II. ISSUES

The first set of issues before this Court concerns whether the Bankruptcy Judge's designation of Luper as Trustee and approval of Luper's firm as counsel to the Trustee were erroneous *ab initio.* This turns upon that Court's findings (1) that Luper is a "disinterested" person, a requisite for a trustee under 11 U.S.C. § 1104, and (2) that the firm of Luper, Wolinetz, Sheriff & Neidenthal is "disinterested," which is necessary to serve as counsel to a trustee under 11 U.S.C. § 327. The appellants also assign as error that the Bankruptcy Judge improperly made findings of fact beyond, or contrary to, the stipulations. Finally, there is an issue as to whether a failure to disclose affects disinterestedness or would otherwise require disqualification of the Trustee and counsel.

## III. STANDARDS ON APPEAL

The questioned orders of the Bankruptcy Judge are considered interlocutory and, as such, leave of this Court is necessary to hear the matter. 28 U.S.C. § 158(a). Because the appeal is supported with some documentation that could adversely reflect upon the administration of justice, the Court grants the motion for leave to appeal. In this appeal, conclusions of law are considered *de novo,* but findings of fact may be set aside only if clearly erroneous, i.e., "against the clear weight of the evidence or [the court] 'is left with the definite and firm conviction that a mistake has been committed.'" *West v. Fred Wright Construction Co.,* 756 F.2d 31, 34 (6th Cir.1985), quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Thus, the findings of the Bankruptcy Judge are to be given some deference— some leeway, if you will. Rule 8013.

## IV. DISINTERESTEDNESS AND PRIOR ATTORNEY–CLIENT RELATIONSHIP

The threshold issue in this matter is whether Luper and his firm are "disinterested" persons within the meaning of 11 U.S.C. § 101(13). Appellants suggest that any prior representation of one or more creditors by the Luper firm must result in a finding that Luper and the firm were not

"disinterested" for purposes of 11 U.S.C. §§ 1104 and 327. They assert that the fact of representation in commercial collection or other cases created attorney-client relationships which inherently preclude disinterestedness.

■ The Court concludes as a matter of law that representation in a commercial collection case does create an attorney-client relationship which brings with it such duties of confidentiality as are warranted by the facts in each case. The Court declines, however, to adopt a *per se* rule that would preclude an attorney for one or more creditors from becoming a trustee or counsel to a trustee, even though appellants cite some cases where courts have so held. The better rule is that disinterestedness does not necessarily preclude attorneys who previously had represented parties adverse to a debtor, including creditors. *Fondiller v. Robertson*, 15 B.R. 890 (Bankruptcy Appellate Panel, 9th Cir.1981), appeal dismissed on standing grounds, 707 F.2d 441 (9th Cir.1983). To hold otherwise would fly in the face of Congressional direction, for Congress clearly rejected the *per se* approach in favor of an actual-conflict-of-interest approach when it amended the bankruptcy code in 1984. 11 U.S.C. § 327(c). The new version of § 327(c) provides that:

> ... a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

Thus, the controlling determinations here are whether the prior representations created "an actual conflict of interest." The Bankruptcy Judge held that there was no actual conflict of interest and that Luper and his firm were "disinterested" persons. These were findings of fact which cannot be disturbed by the Court unless they are clearly erroneous.

Appellants suggest the presence of conflicts and absence of disinterestedness from three aspects of Luper and his firm's conduct: 1) prior representation of creditors and others by the firm, 2) some technically subsequent representation, and 3) failure of Luper and his firm to disclose certain prior representations.

## V. ACTUAL CONFLICT AND MATERIAL ADVERSITY

The Bankruptcy Court's finding that the Trustee and his counsel were "disinterested" was not clearly erroneous.

■ On its face, 11 U.S.C. § 101(13), which is the definitional section applicable to §§ 327 and 1104, does not identify attorneys who have represented prejudgment creditors as incapable of qualifying as "disinterested." Indeed, the language of § 327(c) makes it clear that more need be shown. Likewise, just because one may not be disqualified by virtue of prior representation, that does not mean that qualification is automatic. Still, the notion that one may be held to be "not disinterested" because he has an interest adverse to the estate "for any other reason," 11 U.S.C. § 101(13)(E), does suggest that if an objecting creditor advances evidence to support some "other reason," the Bankruptcy Judge is bound to consider it. But, the adjective "other" appears to qualify the nature of the reasons that might be considered. Since § 327(c) already says that prior representation *per se* will not disqualify and since that section was amended after § 101(13), it is clear that "any other reason" related to prior representation must refer to the specialized circumstances and qualities of that prior representation that would move it beyond the ordinary and endow it with such character and qualities as would create an "actual conflict of interest" under § 327(c) or "an interest materially adverse to the interest of the estate or of any class of creditor" under § 101(13)(E). Whether those circumstances exist must be considered as of the time of the appointment, not just whether there may have been some nominal and historical conflict or whether there might be speculative future conflict—for the statutes require "actual" conflict and "material" adversity of interests.

The Bankruptcy Judge examined the claims surrounding the prior representations and the imperfectly terminated representation and concluded that they did not render Luper and his firm non-disinterested. While this Court might have reached a different conclusion if it were considering the matter *de novo*, appellants have not established that the decision of the Bankruptcy Judge was clearly erroneous, and the Court is not "left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co., supra,* 333 U.S. at 395, 68 S.Ct. at 542.

Related to disinterestedness, appellants also assert that the prior representations establish a "substantial relationship" which "requires the mere showing of some relation between the subject matters or factual contexts of the former and current representations." Appellants' Reply Brief, at 6 (citation omitted). But, as previously noted, Congress has already decided that in the bankruptcy context "actual conflict" is the basis for disqualification. 11 U.S.C. § 327(c). And, appellees point out that, in the unlikely event that a conflict arises subsequently, this can be dealt with through designation of a special counsel or through counsel for the unsecured creditors' committee, albeit at possible additional cost.

## VI. CODE OF PROFESSIONAL RESPONSIBILITY

The appellants also maintain that the Bankruptcy Judge's retention of the Trustee and counsel was clearly erroneous because it violates Canons 4 (duty to preserve confidences), 5 (duty to exercise independent judgment on behalf of client), and 9 (duty to avoid appearance of impropriety) of the Code of Professional Responsibility.

For there to be a violation of the duty to preserve confidences would require that there be a "substantial relationship" between the prior representations and the instant case, *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir.1975), when a reasonable person would view the relationship as significant to the issues. *Kraft Inc. v. Alton Box Board Co.,* 659 F.2d 1341, 1346 (5th Cir. 1981). Viewing the record in the case at bar, the Court cannot say that the Bankruptcy Judge's findings on this matter are clearly erroneous.

Canon 5 requires attorneys to exercise independent judgment. The parties have stipulated that the prior cases were closed. This permits a reasonable inference of the absence of a "continuing relationship" absent significant additional facts. Appellants suggest that nonetheless the prior representation by Luper and his firm "threatens to dilute their loyalties" and should preclude them from accepting employment as trustee and counsel. But, the Bankruptcy Judge's findings here are not clearly erroneous.

Canon 9 compels attorneys to "avoid even the appearance of impropriety." Luper and his firm suggest an absolute rule that "Canon 9 itself does not create an independent ground for disqualification." Brief of Appellee at 29, citing *Silver Chrysler Plymouth, supra,* 518 F.2d at 757. However, that overstates the holding of the Second Circuit, and neither that Court nor this one accepts such a restrictive interpretation of Canon 9. Nevertheless, Congress clearly intended that prior representation could not *per se* sustain a claim of "appearance of impropriety" because it required a case by case adjudication of the premises underlying objections on such bases. 11 U.S.C. § 327(c). What is required is a factual analysis to determine whether a "threshold quantum" of evidence really creates such an appearance:

> The trial judge should focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases. As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy.

*Silver Chrysler Plymouth, supra,* 518 F.2d at 760 (concurring opinion by Judge

Adams of the Third Circuit, sitting by designation). Here, as there, the judge made a finding based on the facts before him. A review of the facts on the record in the case at bar does not establish that the Bankruptcy Judge's finding was clearly erroneous.

## VII. MATTERS OUTSIDE THE RECORD

■ The final contention of appellants is that the Bankruptcy Judge improperly based his decision to appoint Luper and his firm "on matters outside the record [and] contrary to stipulations of fact and actual fact." Brief of Appellants, at 19.

The gravamen of this claim seems to be that when the Bankruptcy Judge made reference to the nature of commercial collection representation, he characterized such practices as having "the mechanical purpose of filing claims, filing collection suits, and that the nature of this representation is not a direct relationship with the client per se who has claim (sic) but comes about through a referral and reference process." Exh. 2 at 59. Appellants complain that this is outside of and contrary to Stipulation No. 7 which refers to "cases which are commonly referred to amongst commercial practitioners as 'commercial collection cases.' Commercial collection cases involve the same client-attorney relationship as other legal matters." Exh. 3, at 8. Appellants also assert the Judge's reference is contrary to actual fact.

Appellants cite, *inter alia, Brown v. Tennessee Gas Pipeline*, 623 F.2d 450 (6th Cir.1980) in support of their general proposition that "a court is bound to follow the facts as stipulated by the parties." Reply Brief of Appellants, at 19. However, the Sixth Circuit actually said that "stipulations and admissions in the pleadings are *generally* binding on the parties and the Court." 623 F.2d at 454 (emphasis added). That court went on to approve findings about the specific character of a relationship as it once existed; the Circuit said that the findings were not precluded by a stipulation to the general nature of the relationship. *Id.*

As the Court has previously noted in Part IV, collection representation involves the same basic attorney-client relationship as other legal matters, but every attorney-client relationship has at least some slightly different characteristics than others. Indeed, legal bonds and ramifications follow all attorney-client relationships, but that does not mean that all such relationships have the same characteristics. In the case at bar the very stipulation itself, while placing collection cases within the attorney-client relationship, also says that the nature of that relationship is "the same ... as other legal matters," Exh. 3, at 8—and attorney-client relationships in all other legal matters differ in extent, depth, involvement, and duration. As the concurring opinion in *Silver Chrysler Plymouth, supra*, indicates, what is relevant is "the nature and extent of the attorney's involvement ... the type of work performed ..." 518 F.2d at 760. Since the stipulation itself mentions that within the attorney-client relationship is a particular genre "commonly referred to" as "commercial collection cases," Exh. 3, at 8, it was not error for the Bankruptcy Judge in his oral opinion to describe such cases in general terms, drawing upon common experience and understanding within the community. The reference to some collection matters as not involving "a direct relationship with the client per se" does not contradict the existence of an attorney-client relationship; it refers to the characteristic of collection attorney-client relationships which commonly do not involve "exposure to formulation of policy or strategy." *Silver Chrysler Plymouth, supra*, 518 F.2d at 760.

Moreover, a subsequent characterization of the relationship between the Luper firm and Frito Lay as "transitory" does not contradict the existence of an attorney-client relationship; rather, it describes the specific qualities (length and depth) of that relationship and is thoroughly consistent with Stipulations No. 3, A, (16) and (17), No. 4–16 and 17, and No. 7. Exh. 3, at 3–4, 6–8. Bankruptcy judges develop substantial expertise in this discrete area of the law, and it would be unusual and perhaps undesirable if, in the course of their duties,

they were not cognizant of the prevailing customs, understandings, and activities common amongst practitioners in the field. From time to time, they may even take judicial notice of them, as was done in the case at bar, consistent with the rules of evidence and the stipulations of the parties. Accordingly, these challenged findings of the Bankruptcy Judge were not erroneous as a matter of law, nor was there clear error as a matter of fact.

## VIII. FAILURE TO DISCLOSE

However, the appellants have complained that in the Luper firm's affidavit in support of approval of the firm as counsel to the Trustee, the Luper firm failed to disclose certain prior representations. Most of these were *de minimis*. But appellants point especially to the failure to disclose prior representation of Frito–Lay, a division of Pepsico, in two debt collection matters, and that both Frito–Lay and Pepsico were listed as substantial creditors of the estate. For the reasons outlined in parts IV, V, and VI above, this limited representation would not have been, as appellants urge, a *per se* disqualification of Luper or his firm. Moreover, the Bankruptcy Judge subsequently determined that, had timely disclosure been made, he would nonetheless have reached the same conclusion. This Court does not find that to be clearly erroneous. The judge noted that Luper had made "a very sincere effort to make full and complete disclosure" of the prior representations. The Court finds no basis to conclude that the effort was anything other than sincere, a quality bespeaking of honesty.

Honesty, however, is not the only standard. In fact, there was a failure of disclosure at an early stage. The Trustee explains that the failure occurred because at the time of his qualification "the filed claims were only accessible numerically ... Our office made no search of these 6,000 claims." Luper Letter to the Court, October 12, 1988, at 1. Subsequently, the Trustee added that "Banner is right that 'a cursory review of the debtor's claims register ... would have revealed Frito Lay's claim' (although I do take issue with the use of the work 'cursory' since we are talking about 6,000 claims)." Luper Letter to the Court, November 1, 1988, at 3. The firm's honesty is unquestioned and commendable, but the Court finds that there is a fiduciary duty not only to make an honest disclosure (which was fulfilled) but to assume the admittedly significant burden of a search, sufficiently extensive in nature that these matters would be uncovered. This duty of "reasonable inquiry" is required by Bankr.Rule 9011(a). The complexities of modern litigation involving sizable law firms create new and complicated problems in the quest to avoid actual or apparent conflicts of interest. Clearly, there should be someone in every law firm, charged with a knowledge of the firm's current and past clients, who could and should undertake at least a cursory examination of a creditors' register in cases such as at bar. Here, the fiduciary duty of diligence required that a member of the firm at least scan the six-hundred-plus pages of the creditors' register.

The Bankruptcy Judge clearly erred by failing both to find a violation of, and to apply some sanction under Rule 9011(a)—but, for the reasons stated earlier, the failure in this matter is not fatal to the appointment of the Trustee or his law firm. Still, had the proper burden been assumed at the outset—i.e., had the firm properly borne its duty of adequate internal procedures to insure disclosure—not only would the taint to the process not have been very colorable, but this Court might not have granted leave to appeal.

Appellants assert that the nondisclosure here compels disqualification of the Trustee and counsel because any resolution merely affecting compensation "is ... 'imperfect at best ...' " Reply Brief of Appellant, at 10 (quoting *In re Roger Au & Son, Inc.*, 65 B.R. 322, 334 (Bankr.N.D. Ohio 1984). The Court acknowledges the imperfection of the lesser sanction it now employs (See Part IX *infra* ), but concludes that on the facts of this case, the interests of the estate, of the creditors, and of the public would not be best served by disquali-

fication and the disruption attendant thereto. Moreover, unlike the case of *In re Futuronics*, 655 F.2d 463 (2d Cir.1981), urged upon the Court by appellants and applying former Bankruptcy Rule 215 (precursor to Bankr.Rule 2014), there has been no deceptive conduct in the case at bar, no egregious behavior that shocks the conscience. However, there has been a significant lapse in the timely and diligent performance of an important step necessary to insure compliance with the duty of disclosure contemplated by Bankruptcy Rules 2014 and 9011(a). While this reflects adversely upon the proper administration of justice, the remedy here is to be measured to the lapse.

## IX. CONCLUSIONS AND REMEDIES

The Court concludes that the designation by the Bankruptcy Judge of Frederick M. Luper as Trustee, the approval of the firm of Luper, Wolinetz, Sheriff and Neidenthal as counsel to the Trustee, and the findings of the Bankruptcy Judge in support of those actions were not clearly erroneous and, in the interests of justice, they should not now be set aside. However, because of the added burden to this litigation occasioned by the failure of the Luper firm timely to disclose certain prior representation of parties to the Chapter 11 proceedings, the Court, pursuant to Bankr.Rules 8014 and 9011(a), orders the following: (1) the Bankruptcy Judge shall disallow $1,000 of the attorney fees requested by the firm of Luper, Wolinetz, Sheriff and Neidenthal (if any such fees have already been paid to the firm, $1,000 shall be refunded by appellees or charged against pending or future fees); (2) appellants may make timely application to this Court for costs and an award of attorney fees that is both reasonable and partial in nature, consistent with their role in bringing to the Bankruptcy Court's attention the appellees' lapse in their duty of "reasonable inquiry" but reflecting that appellants have only modestly prevailed on the merits of their appeal, and (3) the costs and fees of the appellees, including those of any special counsel retained by appellees in defending this appeal, together with any costs and fees recovered from them by appellants pursuant to this order, shall not be borne by the estate.

Accordingly, the orders of the Bankruptcy Judge related to the designation of the Trustee and the employment of counsel to the Trustee are affirmed as modified.

IT IS SO ORDERED.

## OPINION ON RECONSIDERATION

This bankruptcy appeal is before the Court on the motion of the trustee-appellee for reconsideration of a part of the Court's November 29, 1988 order that imposed a fee sanction on the Trustee and a restriction upon the estate with regard to fee payments to the Trustee's appellate counsel. The Trustee maintains that the sanction is disproportionate to the degree of fault and not authorized by the Bankruptcy Rules.

## I. BACKGROUND

This phase of the litigation—which seems to have been pursued with great fervor on both sides—involved Banner's appeal of the designation of Frederick Luper and his firm as Trustee and Counsel to the Trustee, respectively. In its November 29, 1988 order, the Court found that the Trustee and his firm had a "fiduciary duty of diligence" to "undertake at least a cursory examination of a creditors' register" when it assured the Bankruptcy Court that there were no conflicts of interest in being designated Trustee and counsel. While the Court concluded that the breach did not require that the Bankruptcy Judge's designation be overturned, it did find that his failure to find a violation of and to impose a sanction under Rule 9011(a) for inadequate disclosure was clearly erroneous. The Court added that it might not have granted leave to appeal had there been no such omission.

The Court concluded that the interests of justice would be served by retaining Luper and his firm as Trustee and counsel but (a) disallowing $1,000 of their fees in the Bankruptcy Court, (b) allowing appellants reasonable and partial fees for documenting the appellees' lapse but "only modest-

ly" prevailing, and (c) ordering that all costs and fees of appellees, including the fees of special appellate counsel, not be borne by the estate. The Trustee and counsel have filed a timely motion for reconsideration of (a), (b), and (c), but especially (c). Appellants have not yet filed an application for partial fees (b).

## II.

The Trustee maintains that Bankruptcy Rule 8014 authorizes "costs" but not attorney fees against "the losing party on an appeal." Motion for Reconsideration, at 7. However, it was under Rule 9011(a) that the Court ordered the sanction. That rule provides sanctions, in the words of the Trustee, "against an attorney or party who signs a filing without having made reasonable inquiry into its accuracy. Reasonableness is a question of fact that depends upon the circumstances involved." Motion for Reconsideration, at 7. The Trustee says that "it was not reasonably feasible to cross check [its thousands of files] against each of the 6000 creditors." *Id.* at 7–8. The Court, however, noted that the Trustee made "no search" at all. Opinion and Order, at 15, quoting from Trustee's letter to the Court. And, the Court said that there was a duty to "at least scan the six-hundred-plus pages of the creditors' register." *Id.* at 16. Even if it was not feasible to run a complete computer cross-check, a secretary or a paralegal in a very few hours could have at least made a list of the sizable creditors (e.g. six-figure amounts) to be checked against the firm's files. Here, even a seven-figure scan speedily and easily would have yielded the names of Pepsico and Frito–Lay for a check against the files. Thus, on the facts of this case, the Court reaffirms its finding and conclusion that there was a failure of inquiry, to say nothing of diligent inquiry.

The Trustee also suggests that Rule 9011(a) was designed to be remedial rather than to punish harshly those who transgress it. That issue is addressed in Part III below.

## III. PROPORTIONALITY AND THE INTERESTS OF JUSTICE

The Trustee argues that (a) the sanction imposed is disproportionate, considering that the breach did not involve bad faith and that the breach was harmless error since it did not result in disqualification. Further, it is argued, (b) Jenner and Block should not be penalized for the Trustee's conduct before Jenner and Block became involved in the case. In addition, (c) the Trustee asserts that it is being penalized out of proportion to the appellants who have, says Trustee, prevailed only on getting some partial award of fees.

### A.

While the lack of diligence itself did not result in the disqualification of the Trustee or Counsel, it was not harmless. That is not to suggest that the appellants would not have followed their aggressive course; rather, the lapse lent color to the claims of the appellants and played a role in the Court's exercise of its discretion to hear the appeal. Moreover, the lack of diligence reflects negatively the system of justice and the appearance of justice. Thus, the initial lapse had both real and symbolic costs.

### B.

The assertion that Jenner and Block should not be penalized for the lapse of the Trustee that occurred before they entered the case misconstrues the nature of this Court's order and opinion. Jenner and Block was not precluded from being paid for their work; rather, the Court prohibited that costs from being borne by the estate; nothing would prevent it from recovering from the Luper firm.

### C.

The assertion of the Trustee and Counsel to the Trustee that they are being penalized disproportionately to their lapse and to the fact that they prevailed in retaining their roles in handling the bankruptcy estate deserves consideration.

In fashioning its sanction, the Court was not intending to emulate Draco of Athens.

Rather it concluded that (a) $1000, with (b) a prohibition on charging appellate fees to the estate, and (c) modest partial fees to appellants was a reasonable remedy, albeit not the only reasonable remedy.

While the appellants did not, in the main, prevail in their attempt to unseat the Trustee and counsel, they performed a service in bringing to the Court's attention and documenting the lapse under Rule 9011(a). Accordingly, the Court reaffirms its judgment that they be partially compensated for their role in that vein as a proportion of the total case.

The Court also feels that the $1,000 remission of fees was also appropriate, and reaffirms that portion of the judgment.

Still, the Court reconsiders the prohibition on the estate from paying any attorneys fees in this matter (1) to the Luper firm or (2) to appellate counsel retained by Luper in this matter. At the time the Court ruled on the matter, neither party sought a hearing nor did either party put forth evidence on the level of fees involved—perhaps because neither party contemplated that the Court would pursue this line of remedy. However, the Court has now contemplated the magnitude of the fees involved and believes that one phase of the sanction it imposed will have an impact that is disproportionate to the Court's intent and to the interests of justice in this case. Accordingly, the Court reaffirms the prohibition upon the estate paying any fees to the Trustee or his law firm in this appeal, but the Court reconsiders its total prohibition on payments of fees to the outside appellate counsel and modifies its order to the effect that the estate shall not pay $5,000 of the fees otherwise approved for outside counsel. Nothing herein should be construed as prohibiting outside counsel from collecting said fees from the Luper firm.

## IV.

Accordingly, the Court reconsiders the fee portion of its opinion and order of November 29, 1988, and modifies Part IX (3) therein to read as follows:

the costs and fees of the appellee Trustee and his law firm, together with any costs and fees recovered from them by appellants pursuant to this order, shall not be borne by the estate; in addition, the first $5,000 of the fees approved or approvable for outside counsel for appellees in this matter shall not be taxed to the estate (to the extent that any such fees may already have been paid to outside counsel, $5,000 shall be refunded to the estate by appellees or charged against pending or yet-to-be-submitted fees of outside counsel or appellees).

Parts IX(1) and (2) remain unmodified and are reaffirmed.

Finally, the Court notes that litigious zeal in this case has resulted in a protracted and complex set of proceedings with multiple appeals—all of which may be thoroughly necessary. Still, the Court urges all parties to approach the matter with a more commodious spirit, lest this case emulate that of Maloji Thorat whose lawsuit in Poona, India was not resolved until a descendant obtained a judgment in 1966, some 761 years later. Guinness Factfile, Montreal Gazette, August 29, 1988 at B–10.

The prior judgment of this Court is reaffirmed as modified.

IT IS SO ORDERED.

### OPINION AND ORDER

### ON FEE APPLICATIONS

This matter is before the Court on appellants' (1) application for attorneys' fees in the amount of $28,161 and (2) application for "instructions from the Court regarding compliance with [the Court's earlier orders concerning] costs and fees of appellees in defending the appeal."

### I. AWARD OF FEES TO APPELLANTS

■ In Parts VIII and IX of its Opinion and Order of November 29, 1988, the Court set forth its basis for authorizing the appellants to apply for "an award of attorney fees that is both reasonable and partial in nature, consistent with their role in bringing to the Bankruptcy Court's attention the

appellees' lapse in their duty of 'reasonable inquiry' but reflecting that appellants have only modestly prevailed on the merits of their appeal." In Part V, § C of its January 11, 1989 Opinion and Order, the Court observed that the appellants "performed a service in bringing to the Court's attention and documenting" the lapse that was a basis for this Court's decision to hear their appeal and to apply remedial measures, even though they did not unseat the Trustee. They have now applied for $28,161.

While the separate components of the request may be reasonable, the aggregate is neither partial nor modest. The documentation supplied does not readily lend itself to identifying those portions of the functions performed that might be designated as relating to the matter on which the appellant prevailed—in much the same way as appellee has documented his functions and about which appellants complain (see Part II, below). However, the reality of it all is that it may be thoroughly impracticable to undertake a detailed functional analysis without further, unwarranted use of counsel's and the Court's time in this matter.

The Court has examined the appellants' time sheets and, while the overall amount may be in excess of the fees that the Trustee indicated that he was being billed to defend the appeal (see, inter alia, Trustee's Motion for Reconsideration), the amount (after a 10% disallowance for some overlap and duplication of efforts) is within the ball park (pressing the edges of the outfield, to be more precise) of what might be reasonable for the overall fees for the appeal. However, as the Court has indicated, appellants are entitled to only a partial award of fees consistent with the modest extent to which they have prevailed. The Court assesses that extent at twenty percent. Admittedly, this figure is somewhat arbitrary, but it is a reasonable assessment by the Court of the time devoted to various aspects of the appeal and it approximates the balances struck by the Court's resolution of the merits of this appeal. For these reasons, and because of the difficulty of isolating the specific functions and the pressing need to terminate

the seemingly endless capacity for devotion of client resources to collateral matters, the Court adopts a percentage approach to the award.

The Court calculates the net amount of attorneys fees as follows: the original application amount of $28,161 is first reduced by 10% (duplication and overlap) to yield $25,345; appellants are entitled to 20% of that yield, namely $5,069.

## II. APPLICATION FOR "INSTRUCTIONS"

■ Appellants call to the Court's attention that its previous orders completely precluded the Trustee and his law firm (as distinguished from his outside counsel) from being reimbursed from the trust estate; they complain that in the Trustee's fee applications in the Bankruptcy Court, the "entries are lumped so that it is impossible to ascertain how much time was devoted to the defense of the appeal." They ask the Court for instructions on how to assure that this Court's order was or will be followed.

The answer is that the Bankruptcy Judge possesses the highest degree of familiarity with the myriad of details and functions performed by the Trustee and his firm in the Bankruptcy Court. Thus, he is in the best position to determine whether, and to what extent if any, the billings of the Trustee and his firm include matters from this appeal. Accordingly, the Court concludes that, consistent with 11 U.S.C. § 330 and the prior orders of this Court, this matter is properly vested in the sound discretion of the Bankruptcy Judge. He "has discretion to determine reasonable compensation for services rendered in bankruptcy proceedings." *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 422 (9th Cir.1983) (citations omitted). In the event of an appeal therefrom, "[s]uch a fee award will be upheld unless the awarding court abused its discretion or erroneously applied the law.... The bankruptcy court's findings of fact are binding on the district court ... unless clearly erroneous." *Id.*

### III. CONCLUSIONS

For the foregoing reasons the Court (1) orders that the Trustee and his firm are to pay the sum of $5,069 to appellants' counsel and (2) instructs appellants that compliance with, and implementation of, the Court's prior orders restricting the costs and fees of the appellees in defending the appeal are committed to the Bankruptcy Court.

IT IS SO ORDERED.