**In re ST. CHARLES PRESERVATION INVESTORS, LTD.**

Civ. A. No. 89–3302.

United States District Court,
District of Columbia.

March 28, 1990.

**470**

Robert H. Bear, Maxwell & Bear, Washington, D.C., for appellants, Class A Ltd. Partners.

Francis P. Dicello, Hazel, Thomas, Fiske, Beckhorn & Hanes, Washington, D.C., for appellees, Class B Ltd. Partners.

Kevin R. McCarthy, Lepon, McCarthy, Jutkowitz & Holzworth, Washington, D.C., for appellee, trustee.

## MEMORANDUM DECISION AND ORDER

REVERCOMB, District Judge.

This matter is before the Court on appeal from an order of the United States Bankruptcy Court for the District of Columbia. *See* Case No. 87–01126. The appellants contend that the bankruptcy court erred in ruling that the Class A Limited Partners' right to interest on their invested capital was not a claim conferring creditor status within the meaning of 11 U.S.C. § 101(4), (9) and that the bankruptcy court accordingly erred in denying the Class A Limited Partners' motion to confirm the election of the Chapter 7 trustee.

### I. Facts [1]

The debtor in this case, St. Charles Preservation Investors, Ltd., is a Georgia limited partnership. It was formed in 1983 to acquire the St. Charles Hotel located in Washington, D.C. In order to raise the purchase price for the hotel, it issued limited partnership interests denoted as "Class A" and "Class B."

The Class A limited partners were required to make a one-time cash payment of $19,000 for each unit as the purchase price for their interests at the time of their purchase. The partnership agreement provided that these limited partners would be entitled to receive guaranteed payments consisting of the payback of their purchase price in two specified installments and the right to receive interest at the stated rate of 18% per year. (*Partnership Agreement*, § 10.1, at 18). The offering materials cautioned these investors that the partnership would accrue interest expenses based upon the legal rights conferred, even if the partnership defaulted on the payments. (*Private Placement Memorandum* at 19). The Class A Limited Partners also received a nominal equity interest consisting of a one percent interest on profits, shared among the Class A Limited Partners as a group. This was to increase to a ten percent shared interest when all investors recovered their investment. (*Partnership Agreement*, § 11.1, at 20).

The Class B limited partners were required to make contributions of $62,000 per unit, payable $12,000 upon subscription, with the balance payable over four years ending March 1, 1987.

The Hotel suffered substantial operating losses and was eventually lost through foreclosure. The Class B partners defaulted on their obligation to St. Charles starting in March, 1985, and there is now a balance of $34,000 due and owing to the debtor for each Class B limited partnership interest. Because the hotel property was owned through another limited partnership which went through bankruptcy itself, there are no other assets in the instant estate.

### II. Procedural History

On December 22, 1987, St. Charles Preservation Investors, Ltd., the debtor herein,

---

1. Pursuant to Bankruptcy Rule of Procedure 8010(a)(2), the appellees have adopted appel- lants' presentation of "Facts Relevant To The Issue Presented."

filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia. At the meeting of creditors held on January 28, 1988 and continued to February 16, 1988, counsel for the Class A Limited Partners requested the election of a permanent trustee and nominated and voted for Joseph R. Whaley. An objection was made and a motion to confirm Whaley's election was filed on March 2, 1988. A hearing on the motion filed by the Class B Limited Partners to dismiss or abstain, in addition to the Class A Limited Partners' motion to confirm the election, was held on June 22, 1988.

On November 7, 1989, the Bankruptcy Judge issued an Order Denying Motion to Dismiss or Abstain and Denying Motion to Confirm the Election of Chapter 7 Trustee, and a supporting Memorandum Opinion. The bankruptcy court ruled that the Class A Limited Partners' right to interest on their invested capital was not a debt conferring creditor status within the meaning of 11 U.S.C. § 101(9).

A notice of appeal to this Court was filed by the appellants on November 14, 1989.

III. Appealability

■ This Court has jurisdiction to hear appeals from the bankruptcy court pursuant to 28 U.S.C. § 158.[2] Orders in bankruptcy cases may be immediately appealed as final orders as a matter of right if they dispose of discrete disputes within the larger case. It is not necessary to await the acceptance of the trustee's final account. *In re County Management, Inc.,* 788 F.2d 311, 313 (5th Cir.1986).

■ In the instant case, the appellees contend that the order is not a final order pursuant to 28 U.S.C. § 158(a) because "[a]n order denying the motion to confirm the election of a trustee ... merely involves a preliminary step in the administration of a bankruptcy case—the designation of an individual who shall administer the

estate, under the supervision of the Bankruptcy Court and other parties in interest." *Appellees' Brief* at 12.

The appellees' primary reliance on *In re Delta Services Industries,* 782 F.2d 1267 (5th Cir.1986), is not only inapposite but in fact supports the position of the appellants. In *Delta Services,* the court held that a bankruptcy court order approving appointment of an interim trustee was not a final appealable decision. However, recognizing that bankruptcy proceedings require a distinctive and more flexible definition of finality than that obtained in ordinary civil cases under 28 U.S.C. § 1291, the court adopted an approach which would consider an order final and appealable if it "conclusively determine[d] substantive rights of parties." *Id.* at 1269–70. In *Delta Services,* the court held that because of the limited and temporary role of an interim trustee, the substantive rights of the parties would not be effected. The court expressly limited its holding to that of an interim trustee, explaining that an order approving the appointment of an interim trustee merely constituted a preliminary step in the liquidation proceedings and that "[t]he service of the interim trustee terminates when the creditors elect a permanent trustee." *Id.* at 1271.

In the instant case, the election of the permanent trustee is hardly a preliminary step in the liquidation proceeding but is fundamental to the proceeding itself and the permanent trustee will be engaged in such proceeding to its conclusion. More fundamentally, however, the order denying appellants' motion to confirm the permanent trustee conclusively effects significant and substantive rights of the appellants.

■ The bankruptcy court's order conclusively determines the creditors' right to elect the trustee to represent their interests. This Court fully recognizes that a creditor does not have a right to the appointment of a particular trustee, but a creditor *does* have an interest "in the meth-

---

2. This Court acts as an appellate court regarding decisions made by the bankruptcy court. As an appellate court, this Court may only set aside the bankruptcy court's findings of fact if they are clearly erroneous. Bankruptcy Rule of Procedure 8013. An appellate court, however, may independently review questions of law. *In re Jersey City Medical Center,* 817 F.2d 1055, 1059 (3d Cir.1987).

od by which the trustee is appointed or removed and a right to insist that the appointment or removal be made in accordance with applicable bankruptcy rules." *In re Homer Arth Well No. 1,* 529 F.2d 1272, 1274 (6th Cir.1976).

The bankruptcy court's denial of the motion to confirm the election of the trustee was premised on its determination that the Class A Limited Partners did not have any status as creditors of the estate and that it accordingly did not have a right to request the election of a permanent trustee and vote in that election. Thus, this determination did not simply involve the asserted right of the Class A Limited Partners to participate in the selection of a permanent trustee but, more fundamentally, was a disposition of the status of the Class A Limited Partners and their subsequent rights and priorities throughout the bankruptcy proceeding. The appellees do not contend that the bankruptcy court's disposition of status of the Class A Limited Partners is not conclusive. An order which conclusively determines a separable dispute over a creditor's claim or priority is appealable. *In re Saco Development Corp.,* 711 F.2d 441, 444, 445–46 (1st Cir.1983).[3]

### IV. Merits

At the February 16, 1988 meeting of creditors, Joseph R. Whaley, was nominat-

ed as permanent trustee and received the votes of the Class A Limited Partners who, assuming that their rights against the estate are considered "claims," hold a sufficient majority of the total unsecured claims of the debtor. However, the bankruptcy court denied the motion to confirm the election of the trustee on the basis that the Class A Limited Partners were not "creditors" (i.e., holders of valid "claims") within the meaning of the Bankruptcy Code.

The Code provides the definitions for "claim" and "creditor":

In this title—

\* \* \* \* \* \*

(4) "claim" means—

(A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment....

\* \* \* \* \* \*

(9) "creditor" means—

(A) entity that *has a claim against the debtor* that arose at the time of or

---

**3.** In any event, this Court would certainly allow an appeal of the bankruptcy court's order under the collateral final order doctrine of *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under *Cohen,* an order is considered collateral and final if the order conclusively determines disputed issues, resolves important questions completely separate from the merits of the action, and is effectively unreviewable on appeal from final judgment.

In the instant case, the appellees do not dispute the finality of the bankruptcy court's determination that the Class A Limited Partners are not creditors with claims and accordingly are not entitled to participate in the selection of the permanent trustee. Moreover, these issues are clearly important questions which are separate from the merits of the action. Indeed, the appellees concede that the order has nothing to do with the merits of the bankruptcy action but simply resolves the identity of the trustee. *Appellees' Brief* at 16. Finally, although the appellants could appeal the bankruptcy court's order from a final judgment of the bankruptcy pro-

ceedings, this Court is aware as a practical matter that an appellate court may be reluctant to reverse the bankruptcy court and order the entire bankruptcy proceeding retried because of an error in determining the identity of the permanent trustee. *Cf. Groper v. Taft,* 717 F.2d 1415 (D.C.Cir.1983) (orders removing an attorney are immediately appealable because of the impracticality of sending a case back after the trial has been conducted because of an improper removal). Moreover, if an appellate court did in fact send the entire bankruptcy case back to square one because the appellants were in fact denied their status as creditors to assert claims and their right to participate in the election of a trustee, the judicial system, the debtor and its creditors would have suffered an enormous waste of time and resources. This Court is cognizant of the institutional efficiencies of disposing of this issue as a collateral final order rather than risking the entire bankruptcy proceeding on a later appeal. Accordingly, this Court finds the order *effectively* unappealable from a final judgment.

before the order for relief concerning the debtor;

11 U.S.C. § 101(4), (9) (emphasis added). The statute refers to a "right to payment" as it exists at the filing of the petition (with limited exceptions for specified claims arising subsequent to the petition). 11 U.S.C. § 502.

 Under the plain language of the statute, if the Class A Limited Partners had legally enforceable rights to the payment of money from the debtor at the time of the bankruptcy petition, then they are "creditors" as the holders of "claims." The plain language of the statute is the best source of legislative intent and is to be followed unless to do so would be plainly inconsistent with the legislative history or would create an absurd result. *Connecticut v. Schweiker*, 684 F.2d 979, 990 (D.C. Cir.1982). In the instant case, the legislative history in fact supports the appellants' argument that Congress intended to define the class of creditors broadly. Congress intended "the broadest possible definition" so that *"all legal obligations* of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808, 6266; *In re Thomas*, 12 B.R. 432 (Bankr.S.D.Iowa 1981) (definition "could not be broader"); *In re Mandalay Shores Co-op Hous. Ass'n*, 54 B.R. 632, 635 (Bankr.M.D.Fla. 1984).

In the instant case, the partnership agreement provides that the Class A Limited Partners are legally entitled to payments of money from the debtor at specified intervals:

Section 10.1 *Class A Guaranteed Payments.* The Partnership *shall* pay to the Class A Partners a *guaranteed payment* of interest equal to eighteen percent (18%) per annum of that portion of the Agreed Capital Contribution from time to time contributed in cash to the Partnership and not returned by distribu-

tions pursuant to Article XI. Such *guaranteed payment shall be paid* to the holder of the Class A Unit on a monthly basis.... Further, on March 1, 1986, and March 1, 1987, an $9,500 payment (or an aggregate of $19,000 per Class A Unit) *will be made* as a return of capital to the Class A Limited Partners, after which no further *guaranteed payments* will be made.

Under the Agreement the Class A Limited Partners had a legal entitlement. The appellees do not contend that the appellants do not have a legally enforceable right to the payment of money.

Notwithstanding the fact that the appellants' guaranteed payments fall under the literal language of the statutory definitions of claim and creditor, the appellees and the bankruptcy court contend that an interest in a limited partnership is an equity security and that holders of equity securities do not qualify as creditors within the meaning of § 101(4), (9).

The bankruptcy code provides:

(15) "equity security" means:

 (A) share in a corporation, whether or not transferable or denominated "stock," or similar security;

 (B) *interest of a limited partner in a limited partnership;* or

 (C) warrant or right, other than a right to convert, to purchase, to sell, or subscribe, to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph;

(16) "equity security holder" means holder of an equity security of the debtor.

11 U.S.C. § 101(15), (16) (emphasis added). In the instant case, the appellants do not dispute that the Partnership Agreement gave them a security interest in the debtor. As the bankruptcy court stated:

the Class A Limited Partners were entitled to 1% of the earnings and profits of the partnership until the Class B Limited Partners received back their capital contributions, after which the allocation to Class A Limited Partners would have increased to 10%.

*Memorandum Opinion* at 24; *see Partnership Agreement* at § 11.1.

However, the appellants' entitlement to guaranteed payment obligations are *in addition to and separate from* their equity security interests. The bankruptcy court itself recognized that the equity security interest was *"[b]esides* the regular guaranteed payments...." Although the Partnership Agreement is a single instrument, it creates separate and distinct interests which are independent of each other, namely, the guaranteed payments and the profit sharing. There is no provision in the Bankruptcy Code that a limited partner with an equity security interest cannot also have an independent claim within the definition of 101(4) arising out of the same instrument. In other words, the appellees cannot demonstrate that the definitions of "creditor" and "equity security holder" are mutually exclusive.

The primary decision relied upon by appellees is *In re Pine Lake Village Apartment Co.*, 21 B.R. 478 (Bankr.S.D.N.Y. 1982), in which the court held that an interest "as a partner" cannot qualify as a right to payment qualifying as a claim: "[s]imply put, an equity security interest is not a claim against the debtor for which the equity holder may assert a right of payment." *Id.* at 480. However, nothing in *Pine Lake* suggests that the partners in that case were asserting any rights beyond a general expectation to share in profits as equity security holders and the decision accordingly does not address the situation involved in the instant case where the asserted claim is based on the Class A Limited Partners' legal entitlement to the guaranteed payments *regardless* of the debtor's earning of profits.

Indeed, contrary to the appellees' argument, the Bankruptcy Code implicitly recognizes that limited partnership interests often would be intertwined with creditor claims. The Code expressly permits limited partners to file involuntary petitions in their capacity as creditors rather than equity security holders. *See* 11 U.S.C. § 303. If Congress intended to restrict limited partners from pressing claims that arose from the same instrument that creates their equity security then it would have said something to that effect. Instead, Congress expressly defined "claim" solely in terms of the existence of a "right to payment" as the sole criterion.[4]

Moreover, the limited available caselaw supports the appellants' position that an investment vehicle can have the characteristics of both an "equity" security and a "debt" security. In *In re Mandalay Shores Co-operative Hous. Ass'n*, 54 B.R. 632 (Fla.1984), claims for return of capital contributions were also recognized as a "right to repayment" where tenants relied upon representations that the capital would be returned to them. *Id.* at 635–36. *See also In re Baldwin–United Corp.*, 52 B.R. 549, 552 (Ohio 1985) (cash surrender rights under a stock option plan are general unsecured claims to the extent guaranteed payments were promised although the stock acquisition rights of the same plan must be treated as equity securities).

In the absence of anything in the Bankruptcy Code which removes any right a creditor has because of a separate equity interest in the same investment instrument, this Court is unwilling to narrow the scope of the definitions of "claim" and "creditor." A "right to payment" is a "claim" as defined within the Code and the appellees do not contend that the Class A Limited Partners were not legally entitled to the guaranteed payments provided for in section 10.1 of the Partnership Agreement. In order to adopt the appellees' position this Court would be required to judicially restrict the definition of "claim" under

---

**4.** The appellees further rely upon a statement in the House Report which states that: "Partners in the partnership are not claim holders by virtue of their partnership interest, even though they may independently hold non-contingent unsecured claims...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 197 (1977), U.S.Code Cong. & Admin.News 1978, p. 6158. However, this single solitary statement hardly compels this Court to rewrite the plain language of the statute and there is no evidence that the statement was intended to mean anything more than that a partner cannot assert his or her equitable ownership rights as a claim in bankruptcy. *See In re Riverside–Linden Investment Co.*, 85 B.R. 107 (S.D.Cal.1988) (Congress did not intend to make partners in the debtor creditors by virtue of equitable ownership interests).

§ 101(4). However, where Congress has intentionally drafted a particularly broad and inclusive definition of claim, this Court will not subvert that intent by providing the limitation requested by appellees, especially where the definition of "equity holder" is not mutually exclusive with that of "claim." *See Consumers Union v. Heimann,* 589 F.2d 531, 533 (D.C.Cir.1978).

Accordingly, it hereby is

ORDERED that the bankruptcy court order denying the confirmation of the election of Joseph R. Whaley as permanent trustee be, and hereby is, REVERSED; and it is further

ORDERED that this case is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion.