**In re BLINDER, ROBINSON & CO., INC., Debtor.**

**INTERCONTINENTAL ENTERPRISES, INC., Appellant,**

v.

**Glenn E. KELLER, Jr., Trustee for Blinder, Robinson & Co., Inc., et al., Appellees.**

**Bankruptcy No. 90–K–1670.**

United States District Court, D. Colorado.

July 1, 1991.

On Reconsideration Aug. 14, 1991.

Godwin, Carlton & Maxwell, P.C., Jay L. Gueck, Robert M. Nicoud, Jr., Dallas, Tex., for appellant.

William A. Bianco, Gale T. Miller, Jeffrey R. Pilkington, Davis, Graham & Stubbs, Denver, Colo., for appellees.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this bankruptcy appeal, I am asked to unscramble an omelet. Intercontinental Enterprises, Inc. challenges the bankruptcy court's ruling, entered September 6, 1990, denying its objection to the retention of Glenn E. Keller, Jr. as Trustee for Blinder, Robinson & Company, Inc. and the law firm of Davis, Graham & Stubbs as his counsel. Intercontinental argues that the appointment was improper because (1) the Trustee and the firm held a materially adverse interest to creditors or stockholders of the estate of Blinder, Robinson, and (2) the appointment creates an appearance of impropriety. The Trustee contends that this appeal should be dismissed because the order appealed from was not final under 28 U.S.C. § 158(a), and that the appointment was proper.

### I. *Facts.*

Blinder, Robinson filed for reorganization under Chapter 11 of the Bankruptcy Code on July 30, 1990. Thereafter, the Securities Investor Protection Corporation (SIPC) filed a complaint in district court on July 31, 1990, alleging that Blinder, Robinson's customers were in need of protection under the Securities Investor Protection Act (SIPA), 15 U.S.C. § 78aaa–78lll. After a hearing conducted on August 1, 1990, the district court granted SIPC's petition and entered a protective decree.

Under the decree, Mr. Keller was appointed Trustee for Blinder, Robinson and

the law firm of Davis, Graham & Stubbs, of which he is a partner, was appointed as his counsel. *See* 15 U.S.C. § 78eee(b)(3). The case was then removed to the bankruptcy court for further liquidation proceedings. *Id.* § 78eee(b)(4). On August 30, 1990, Intercontinental filed an objection to the retention of the Trustee and his counsel, arguing that neither were "disinterested" as that term is defined under SIPA because the firm represented a potential creditor, Diamond Vision, Inc., in pending litigation against Blinder, Robinson. A hearing was conducted on September 4, 1990, after which the bankruptcy court denied Intercontinental's objection. Intercontinental now appeals this ruling, which is attached as Appendix A to this memorandum opinion and order.

## II. *Issues.*

### A. *Appealability of Order Appointing Trustee and Counsel.*

█ The threshold question in this case is whether Intercontinental may appeal the bankruptcy court's order denying its objection to the retention of the Trustee and his counsel under SIPA. The Trustee contends that this order is not final and not directly appealable under 28 U.S.C. § 158(a). In support of his argument, the Trustee cites a number of cases in which courts have held that an order appointing a trustee or counsel to a party under various Bankruptcy Code provisions is not a final order. *See, e.g., Foster Sec. Inc. v. Sandoz (In re Delta Servs. Indus.),* 782 F.2d 1267, 1269–73 (5th Cir.1986) (order appointing interim trustee under § 701 of the Code); *In re Continental Investment Corp.,* 637 F.2d 1, 4 (1st Cir.1980) (order in proceedings under former Chapter X, denying motion to disqualify counsel to a substantial creditor of the bankrupt); *United States Trustee v. PHM Credit Corp. (In re PHM Credit Corp.),* 99 B.R. 762, 765 (E.D.Mich. 1989) (denying trustee's motion for leave to

appeal § 327 order appointing counsel for debtor-in-possession); *In re Global Marine, Inc.,* 108 B.R. 1009, 1011 (S.D.Tex. 1988) (order awarding fees and denying motion to disqualify counsel to Chapter 11 debtor under § 327); *In re Casco Bay Lines, Inc.,* 14 B.R. 846, 847–48 (1st Cir. BAP 1981) (order denying motion to disqualify counsel for debtor-in-possession not appealable).

These cases are not persuasive. First, none involve a situation comparable to the appointment of a trustee in a SIPA liquidation. *In re Delta Services Industries,* 782 F.2d at 1267, concerned the appointment of an interim trustee under § 701 of the Bankruptcy Code, an act by its nature lacking in finality. The Code contemplates that the role of the interim trustee will be limited and of temporary duration; his or her service terminates when creditors elect a permanent trustee under § 702 of the Code. *See id.* at 1271. Therefore, because the interim trustee has a temporary role in the administration of the estate, courts have rejected attempts at immediate appeal of such orders of appointment. *See also Cash Currency Exch., Inc. v. Shine (In re Cash Currency Exch., Inc.),* 762 F.2d 542, 546 (7th Cir.), *cert. denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *In re Reid,* 773 F.2d 945, 947 n. 3 (7th Cir.1985). *Compare Berg v. Esposito (In re Oxborrow),* 104 B.R. 356, 359 (E.D.Wash.1989) (permitting direct appeal of order voiding creditors' election and appointing interim trustee as permanent trustee), *aff'd,* 913 F.2d 751 (9th Cir.1990).

Likewise, *In re Global Marine, Inc., In re PHM Credit Corp.,* and *In re Casco Bay Lines, Inc.* offer little guidance.[1] These cases adopt the rationale applied by many courts in the non-bankruptcy context that orders granting motions to disqualify are not appealable as final orders or under the collateral order exception to the finality

---

1. *In re Continental Investment Corp.* is also not helpful. That case was decided under former Chapter X of the Bankruptcy Act. While Chapter X reorganizations have certain similarities to SIPA liquidations, *In re Continental Investment Corp.* involved a motion to disqualify counsel to a substantial creditor of the estate, not the trustee or his attorney. *See* 637 F.2d at 2. To my knowledge, there are no cases in which the court has considered whether an order approving the appointment of a trustee and counsel under SIPA is a final order which is immediately appealable.

doctrine because they involve tangential issues for which immediate appeal is not necessary. This rationale is difficult to extend to the context of a SIPA liquidation. First, these cases involved only the disqualification of counsel, and not of any other party. Here, disqualification of Davis, Graham & Stubbs means that the Trustee, too, is disqualified as a member of that firm. *See* Model Code of Professional Responsibility DR 5–105(D) (1982); *In re Southern Diversified Properties, Inc.*, 110 B.R. 992, 995 (Bankr.N.D.Ga.1990). The SIPA trustee plays a central role in any SIPA liquidation proceeding. His powers are vast, and he controls the case from start to finish. *See generally*, 15 U.S.C. § 78fff–1. As at least one court has recognized, as a result of these broad powers, there is often antagonism between the trustee and former customers and creditors of the liquidated entity. *See In re First State Secs. Corp.*, 39 B.R. 26, 27–28 (Bankr.S.D.Fla.1984). Therefore, because of the SIPA trustee's pivotal role in the liquidation process, his or her disqualification has a far greater impact on the proceedings than the disqualification of an attorney to a party.

In the parallel situation under the Bankruptcy Code, many courts have held that orders involving the appointment or removal of a permanent trustee, at minimum, may be heard on an interlocutory basis, and several have suggested that such orders are directly appealable, either as a final order or under the collateral order exception delineated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). For example, in *In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 471–72 (D.D.C.), *appeal dismissed*, 916 F.2d 727 (D.C.Cir.1990), the district court granted leave to appeal the bankruptcy court's ruling refusing to grant certain parties creditor status and denying their motion to confirm the election of the Chapter 7 trustee. Unlike cases involving an appeal of an order relating to the appointment of an interim trustee, the court reasoned that

> [i]n the instant case, the election of the permanent trustee is hardly a prelimi-

nary step in the liquidation proceeding but is fundamental to the proceeding itself and the permanent trustee will be engaged in such proceeding to its conclusion. More fundamentally, however, the order denying appellants' motion to confirm the permanent trustee conclusively effects significant and substantive rights of the appellants.

*Id.* at 471. In addition, the court alternatively would have permitted the parties to appeal the order under the collateral order exception:

> [A]lthough the appellants could appeal the bankruptcy court's order from a final judgment of the bankruptcy proceedings, this Court is aware as a practical matter that an appellate court may be reluctant to reverse the bankruptcy court and order the entire bankruptcy proceeding retried because of an error in determining the identity of the permanent trustee. Moreover, if an appellate court did in fact send the entire bankruptcy case back to square one because the appellants were in fact denied their status as creditors to assert claims and their right to participate in the election of a trustee, the judicial system, the debtor and its creditors would have suffered an enormous waste of time and resources. This court is cognizant of the institutional efficiencies of disposing of this issue as a collateral final order rather than risking the entire bankruptcy proceeding on later appeal. Accordingly, this court finds the order *effectively* unappealable from a final judgment.

*Id.* at 472 n. 3 (citations omitted). *See also Strowski v. Von Wittenburg (In re Strowski)*, 96 B.R. 1007, 1008 (9th Cir. BAP 1989) (noting that denial of immediate appeal of order appointing Chapter 11 trustee could " 'cause irreparable harm to the losing party if it had to wait to the end of the bankruptcy case' "); *In re Paolino*, 60 B.R. 828, 828–29 (E.D.Pa.1986) (suggesting that order appointing trustee is final, but granting leave to appeal); *In re New Haven Radio, Inc.*, 23 B.R. 762, 764 n. 2 (S.D.N.Y.1982) (same); *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 332

(E.D.Pa.1982) (granting leave to appeal order approving the appointment of counsel to the trustee because it affected the fundamental fairness of the proceedings); *cf. Burkhart v. Enney Oilfield Rental Co. (In re Homer Arth Well No. 1)*, 529 F.2d 1272, 1273–74 (6th Cir.1976) (case under former Act, permitting direct appeal of orders relating to appointment of trustee).

As in the above cases, I construe Intercontinental's notice of appeal in this case as a motion for leave to appeal, as permitted by Bankr.R. 8003, and grant leave to appeal the bankruptcy court's order. Without need to hold so, I think that the appeal is proper under the collateral order exception as well. Resolving fundamental questions of the propriety of the trustee's appointment sooner rather than later will not delay the proceedings and may prevent the waste of resources if the appointment is found to be invalid. *See In re St. Charles Preservation Investors, Ltd.*, 112 B.R. at 472 n. 3.

B. *Disinterestedness of Trustee and Counsel.*

Intercontinental's arguments on the merits focus on Davis, Graham & Stubbs' representation of Diamond Vision, Inc. in litigation against Blinder, Robinson at the time the Trustee and the firm were appointed. Intercontinental argues that, by virtue of this representation, neither the Trustee nor the firm are disinterested under SIPA because they held an interest materially adverse to the creditors or shareholders of Blinder, Robinson and the representation created the appearance of impropriety. The Trustee responds that Davis, Graham & Stubbs' representation of a party suing Blinder, Robinson does not render him or the firm not disinterested. In addition, he asserts that the need to avoid an appearance of impropriety is not part of the statutory standard and, in any event, there was no impropriety.

In denying Intercontinental's objection to the retention of the Trustee and his counsel, the bankruptcy court ruled that the firm's connection with Diamond Vision was not "an intertwined, conflict-laden relationship," and that "Intercontinental [had] failed to show more than merely a speculative, potential interest which conceivably might be deemed adverse, but unquestionably is not a 'materially adverse interest.'" Order at 885. The court added that any potential conflict was cured because "DGS has removed all possibility of future conflicts by completely extricating itself from representation of Diamond" and that independent counsel would be retained to consider any claim by Diamond Vision. *Id.* Thus, it concluded

> (1) the Trustee and the Trustee's counsel do not have or hold "an interest materially adverse to the interests of any class of creditors [including customers] or stockholders ...," (2) that there is no actual conflict of interest and, (3) significantly, that there does not exist an appearance of impropriety sufficient to justify disqualification of Keller as Trustee or DGS as attorney for the Trustee in this case.

*Id.* at 885.

■ In this appeal, the bankruptcy court's findings of fact are not to be set aside unless clearly erroneous, but its conclusions of law receive *de novo* review. Bankr.R. 8013. At least one court has held that the bankruptcy court's determination that a party is disinterested is a finding of fact to be disturbed only if there has been clear error, *see In re Lee Way Holding Co.*, 102 B.R. 616, 622 (S.D.Ohio 1988) (construing former § 101(13) of the Code), although there is authority to the contrary. *See In re Philadelphia Athletic Club, Inc.*, 20 B.R. at 331 (disinterestedness under § 101 and § 327 of the Code is a question of law).

Under SIPA, once the district court issues a protective decree, it must appoint a trustee and an attorney for the trustee. 15 U.S.C. § 78eee(b)(3). The trustee and the attorney may be associated with the same firm, but both must be disinterested. *Id.* SIPA defines the term "disinterested" negatively. It provides that a person is not disinterested if:

> (i) such person is a creditor (including a customer), stockholder, or partner of the debtor;

(ii) such person is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the filing date was the underwriter of any securities of the debtor;

(iii) such person is, or was within two years prior to the filing date, a director, partner, officer, or employee of the debtor or such an underwriter, or an attorney for the debtor or such an underwriter; or

(iv) it appears that such person has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such an underwriter, or for any other reason, an interest materially adverse to the interests of any class of creditors (including customers) or stockholders....

*Id.* § 78eee(b)(6). Intercontinental concedes only the fourth exception is applicable to this case.

Several courts have construed the "disinterestedness" standard under SIPA. In *In re Perry, Adams & Lewis Securities, Inc.,* 5 B.R. 63 (Bankr.W.D.Mo.1980), the law firm representing the SIPA trustee was closely connected to Columbia Union National Bank, an entity against whom the trustee was likely to initiate significant litigation. The firm was general counsel to the bank, a partner of the firm sat on the bank's board of directors, and the attorney involved in the SIPA liquidation represented the bank in two other pending actions. *Id.* at 64. The court in *Perry, Adams* found the potential for conflict was great given the trustee's duty to investigate whether there was a potential claim against the bank. Despite the firm's offer to employ separate counsel to prosecute any such claim, the court concluded that the appearance of impropriety could not be avoided, and that counsel for the trustee was not disinterested. *Id.* at 64–65.

The court in *Perry, Adams* cited with approval another case in which a motion to disqualify counsel was granted in a SIPA proceeding, *Handelman v. Weiss,* 368 F.Supp. 258 (S.D.N.Y.1973). In *Handelman,* a member of the firm of Weil, Gotshal & Manges was appointed to represent the SIPA trustee. An associate in the firm, Chester Solomon, participated extensively in examinations of the former directors and officers of the liquidated securities firm on behalf of the trustee. Later, Solomon left the employ of Weil, Gotshal & Manges, formed his own firm, and agreed to represent former customers in litigation against the debtor securities firm. Most of the information contained in the complaint Solomon filed on behalf of the customers was gained during the examinations he conducted while representing the trustee. In disqualifying Solomon from further representation of the former customers, the *Handelman* court held that, in a SIPA proceeding, former security holders must be protected from the appearance of impropriety created when counsel alternately represents the SIPA trustee and a party with an adverse interest. *Id.* at 263.

Finally, in *Securities & Exchange Commission v. Schreiber Bosse & Co.,* 368 F.Supp. 24 (N.D.Ohio 1973), the court squarely confronted the meaning of the term "disinterested" under SIPA. In that case, the SIPC selected Mr. H. James Sheedy and his law firm, Squire, Sanders and Dempsey, to act as trustee and counsel in the SIPA liquidation of Schreiber Bosse & Co., Inc. Squire, Sanders was for several years the principal outside counsel to the Union Commerce Bank, and certain of its partners held directorships in the bank. The firm had also represented the Cleveland Trust Company and Disbro & Company. Each of these entities were creditors of Schreiber Bosse & Co., in the amounts of $39,000, $750 and $5,900, respectively.

In construing the disinterestedness standard, the court in *Schreiber Bosse,* guided by congressional intent, looked to the meaning of the term under former Chapter X of the Bankruptcy Act. *Id.* at 26. Under Chapter X, the trustee was held to an exacting standard. He " 'must be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.' " *Id.* (citing *In re Realty Assocs. Sec. Corp.,* 56 F.Supp. 1007 (E.D.N.Y.1944)). Applying this criterion, the court was most concerned with the firm's connection to the Union Commerce Bank. Its potential claim amounted to ap-

proximately 18 percent of the liabilities of Schreiber Bosse, making it one of the more material creditors of the estate. The court explained,

> [t]he trustee and his attorney are thus related to a creditor whose claim is a substantial and adverse one. The trustee and his attorney can be placed in a posture of potential conflict with respect to this claim. On the one hand, they are charged with the duty of recommending the allowance, advising compromise or objecting to claims. On the other hand, it is apparent that the law firm will be concerned with remaining in the good graces of its client. As a consequence of this situation, there is an appearance that the trustee and his counsel have a personal interest which might be reflected in their decisions concerning the liquidation proceedings. The Court cannot overlook this.

*Id.* at 27. Thus, because of the firm's representation of Union Commerce Bank, the court concluded that neither the trustee nor the firm was disinterested. *Id.*

■ *Perry, Adams, Handelman* and *Schreiber Bosse* clearly indicate that courts take a strict view of the disinterestedness standard under SIPA. Thus, in determining whether the trustee or his counsel meet the requirements of § 78eee(b)(6), even the appearance of impropriety may merit disqualification.[2] The strictness with which the SIPA disinterestedness standard is viewed is echoed in decisions construing the similar requirement under § 101(14) of the Bankruptcy Code that professionals employed to assist in the administration of the estate be disinterested.[3] For example, in *In re Lee Way Holding Co.*, 102 B.R. 616 (S.D.Ohio 1988), the court considered whether a firm's previous representation of a creditor in a commercial collection case rendered it not disinterested under the Bankruptcy Code or created the appearance of impropriety. It held "as a matter of law that representation in a commercial collection case does create an attorney-

2. In his brief on appeal, the Trustee argues that "there is no legal basis for application of [the standard of Canon 9] under SIPA." Response Brief at 9. I find the Trustee's statement regarding the application of Canon 9 troubling.

First, as noted in the preamble and preliminary statement to the Model Code of Professional Responsibility, "the Canons, Ethical Considerations, and Disciplinary Rules ... define the type of ethical conduct that the public has a right to expect ... in all matters pertaining to professional employment." The Code applies to all attorneys appearing in all matters before this court. *See* D.Colo.R. 306.

Second, the Trustee's comment that there is no legal basis for application of the Canon 9 standard under SIPA is also incorrect. The need to avoid the appearance of impropriety forms the baseline for determining whether a party is disinterested under SIPA or the Bankruptcy Code. *See, e.g. Druker v. Green (In re Carla Leather, Inc.)*, 50 B.R. 764, 774 (S.D.N.Y.1985) (considering the appearance of impropriety in connection with a motion to disqualify bankruptcy trustee); *In re Philadelphia Athletic Club*, 20 B.R. at 335 (applying Canon 9); *In re Perry, Adams & Lewis Secs., Inc.*, 5 B.R. at 65 (avoidance of a real appearance of impropriety is of "chief concern ... it is not sufficient that the trustee and his counsel actually be disinterested; the appearance of disinterestedness must also be avoided ..."); *Schreiber Bosse*, 368 F.Supp. at 27 (SIPA trustee not disinterested because "there is an appear-

ance that the trustee and his counsel have a personal interest which might be reflected in their decisions concerning the liquidation proceedings"); *In re Paolino*, 80 B.R. 341, 344 (Bankr.E.D.Pa.1987) (requirement of disinterestedness under Code intended to prevent even the appearance of impropriety).

3. Section 101(14) of the Bankruptcy Code provides, in pertinent part, that a "disinterested person" is one who "does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(14)(E).

Given the close parallel between the SIPA and Code definitions of disinterestedness, I believe Code cases are valuable in construing the SIPA provision. However, both parties rely on several Code cases involving counsel representing both the debtor corporation and its former directors, officers or related entities. *E.g., In re WVS Investment Joint Venture*, No. 89–F–331, 1990 WL 191864 (D.Colo. Jan. 4, 1990); *Colorado Nat'l Bank v. Ginco, Inc. (In re Ginco)*, 105 B.R. 620 (D.Colo.1988); *In re B.H. Smartt*, 132 B.R. 765 (Bankr.D.Colo.1990); *In re Sixth Ave. Car Care Center*, 81 B.R. 628 (Bankr.D.Colo. 1988). Understandably, courts have taken a strict view of such dual representation. That situation is not present here. Hence, I have not addressed the above cases in resolving this appeal.

client relationship which brings with it such duties of confidentiality as are warranted by the facts in each case." *Id.* at 621. Nevertheless, the court declined to adopt a per se rule to disqualify the firm, instead focusing on the specific qualities of the previous representation. It then affirmed the bankruptcy court's finding that the firm was disinterested even though it had previously represented 15 creditors in collection matters and failed to disclose its representation of another large creditor in two other matters, though noting that it may have held differently if considering the matter de novo.

As for the appearance of impropriety, the *Lee Way* court rejected the Trustee's suggestion that a violation of Canon 9 could not independently support the firm's disqualification.[4] It held that the court must determine whether a "threshold quantum" of evidence exists to create the appearance of impropriety by focusing on the similarities between the two situations, the type of legal issues raised, the extent of the attorney's involvement with the case and his exposure to the formulation of policy or strategy. *Id.* at 622. With little discussion of these factors, the court upheld the bankruptcy court's factual determination that no appearance of impropriety was created.

 Here, the question is whether Davis, Graham & Stubbs' representation of Diamond Vision in litigation against Blinder, Robinson disqualifies it and the Trustee from meeting the disinterested standard under SIPA. SIPA requires that the trustee and counsel, "by reason of any other direct or indirect relationship to, connection with or interest in the debtor ... or for any other reason [not hold] an interest materially adverse to the interests of any class of creditors, (including customers) or stockholders." 15 U.S.C. § 78eee(b)(6). That status is determined at the time the trustee and counsel are appointed. *See In re Lee Way Holding Co.,* 102 B.R. at 621.

It is undisputed that, at the time the district court appointed the Trustee and Davis, Graham & Stubbs, the firm had not withdrawn from representing Diamond Vision in the litigation against Blinder, Robinson. In its complaint, Diamond Vision sought damages against Blinder, Robinson totalling $100,000. Although the case was stayed by Blinder, Robinson's bankruptcy filing and the pendency of the SIPA liquidation, it was reasonably foreseeable that, at the time of the appointment, Diamond Vision had a potential claim against Blinder, Robinson for this amount. A potential claim for $100,000 is by no means immaterial, despite the approximately 200,000 potential customer and creditor claimants of Blinder, Robinson. Likewise, it is adverse to the former stockholders and other creditors of Blinder, Robinson. *See* Tr. Vol. III at 42–43.[5] Thus, there is a legitimate argument that Davis, Graham & Stubbs' representation of Diamond Vision rendered it and the Trustee not disinterested under SIPA.

The bankruptcy court discounted this potential conflict, based on its view that "merely a speculative, potential interest which conceivably might be deemed adverse, but unquestionably is not a 'materi-

---

**4.** The Tenth Circuit ducked this issue in *United States v. Troutman,* 814 F.2d 1428 (10th Cir. 1987). The court stated:

> The general language of Canon 9 cannot be construed as a failsafe for a claim of ethical violation where none is found under the specific canons or disciplinary rules applicable to the case at bar. Although courts have not foreclosed the possibility of disqualification under Canon 9 alone, they are reluctant to disqualify a lawyer under Canon 9 when none of Canons 1 through 8 were violated.

*Id.* at 1442 (citations and footnote omitted).

Like the Tenth Circuit in *Troutman,* I am not required to consider whether Canon 9 can independently support disqualification. Both the disinterestedness standard under SIPA and Canon 5 of the Model Code, addressing conflicts relating to the previous representation of an adverse party, provide a separate basis for disqualification.

**5.** In a SIPA liquidation, after customer claims are paid, any remaining assets are available for distribution to creditors, and ultimately, shareholders. Here, if assets are available for distribution to creditors, payment of a substantial claim to Diamond Vision could prejudice payments to other creditors and ultimately limit distribution of any remaining funds to shareholders, namely Intercontinental.

ally adverse interest,'" Order at 885, does not require disqualification. Yet, under the case law construing the SIPA and Code disinterestedness standards, it is clear that even a *potential* conflict of interest is of serious concern. *See, e.g., In re Martin,* 817 F.2d 175, 182 (1st Cir.1987) (the question is "whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse to the estate or the creditors"); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 334 ("catch-all clause" of disinterestedness standard broad enough to include "anyone who in the slightest degree might have some interest or relationship that would even faintly color the independent and impartial attitude required by the Code and Bankruptcy Rules"); *In re Perry, Adams & Lewis Sec., Inc.,* 5 B.R. at 64 (relying on the movant's allegations showing the "prospect of possible litigation" between the SIPA trustee and a bank represented by the trustee's counsel); *Schreiber Bosse,* 368 F.Supp. at 27 (trustee and firm disqualified as a consequence of potential conflict with respect to bank's claim); *In re BH & P, Inc.,* 103 B.R. 556, 564 (Bankr.D.N.J.1989) (holding that even a potential conflict can justify disqualification); *In re Micro–Time Mgmt. Sys., Inc.,* 102 B.R. 602, 607 (Bankr.E.D.Mich. 1989) ("[a]ny hint of any prior or ongoing relationship between [a creditor and the trustee] would create at least the appearance of impropriety"). I find both of the bankruptcy court's conclusions that Davis, Graham & Stubbs' connection to Diamond Vision was too speculative to present the appearance of impropriety and that Diamond Vision's potential claim was not material are clearly erroneous.

■ The bankruptcy court alternatively held that the Trustee's assurances that independent counsel would evaluate any claim Diamond Vision might file, "coupled with the firm's complete release from further representation of Diamond, eliminates any material adverse interest, if indeed, it was present in the first place." Order at 885. This conclusion is clearly erroneous in that the firm had not yet withdrawn as Diamond Vision's counsel. Even if not clearly erroneous, the conclusion has some troubling aspects. First, Davis, Graham & Stubbs did not obtain Diamond Vision's written authorization to withdraw until several weeks after the Trustee and the firm were appointed by the district court, and the state court's approval of that withdrawal did not occur until October 30, 1990, almost two months after the bankruptcy court entered the order appealed from. *See* Response Brief, Exhibits A, B. In addition, several courts have been wary of subsequent efforts to contain the damaging effects of potential conflicts of interest by the appointment of special counsel. *See Perry, Adams,* 5 B.R. at 65 (fully rejecting the notion that prophylactic measures, such as the appointment of special counsel, can protect interested parties from a conflict of interest); *In re Michigan Gen. Corp.,* 77 B.R. 97, 105 (special counsel should be employed only in "exceptional circumstances"), *reh. denied,* 78 B.R. 479 (Bankr. N.D.Tex.1987). Nevertheless, in part in recognition of the complexity of large firm practice and the substantial likelihood that conflicts will arise in any complex liquidation or bankruptcy proceeding, other courts have permitted subsequent curative measures when a firm has faced a potential conflict due to the imperfect termination of its representation of a creditor of the estate. *See United States Trustee v. PHM Credit Corp. (In re PHM Credit Corp.),* 110 B.R. 284, 287–88 (E.D.Mich.1990) (upholding bankruptcy court's power, under § 105 of the Code, to appoint counsel for the debtor-in-possession, subject to remedial measures to eliminate conflict of interest); *In re Lee Way Holding Co.,* 102 B.R. at 622 (permitting the appointment of special counsel to evaluate claims of creditors formerly represented by counsel to the trustee). Therefore, it was appropriate for the bankruptcy court to rely on the Trustee's representations during the hearing that formal withdrawal, with a court order, would be accomplished and that the Trustee would employ special counsel to evaluate any claim of Diamond Vision.

In sum, the Trustee and Davis, Graham & Stubbs failed under the disinterestedness standard of SIPA. While the firm's in-

volvement with Diamond Vision was not of the same magnitude as the connection between counsel and creditor in the *Perry, Adams, Handelman* and *Schreiber Bosse* cases, neither was it minor. More importantly, as described in further detail below, the Trustee and the firm were not forthright in disclosing this potential problem for independent court review before their appointment. This, in itself, presents an appearance of impropriety.

Notwithstanding these problems, the liquidation proceedings have progressed to the point that appointing a new Trustee and counsel would be a major disruption. *See, e.g., In re Lee Way Holding Co.*, 102 B.R. at 625 (declining to disqualify counsel to the trustee because of disruption in the proceedings where there has been no deceptive conduct or behavior that shocks the conscience); *In re REA Holding Corp.*, 2 B.R. 733, 735 (S.D.N.Y.1980) (removal of trustee appropriate only when the administration of the estate would suffer more from the discord created by the present trustee than from a change in administration); *In re Concept Packaging Corp.*, 7 B.R. 607, 609 (Bankr.S.D.N.Y.1980) (same). Since the firm now has fully withdrawn from the Diamond Vision litigation, and the Trustee has pledged that an independent third party will review any claims for which there is a conflict, I think more rather than less damage would be done by reversing the bankruptcy court.

I am compelled to find that the conduct of the Trustee and his firm was not exemplary. Three aspects of the firm's handling of this issue are troubling. First, it appears that there was no voluntary disclosure of the Diamond Vision representation. On August 9, 1990, both the Trustee and the firm filed declarations of disinterestedness in the bankruptcy court. These substantially identical statements contain a rote recitation of the elements of the disinterestedness standard under SIPA and a conclusion that the Trustee and the firm were in compliance with this standard. There is no mention of the Diamond Vision matter. *See* R. Vol. I (unnumbered docket entries of August 9, 1990). This issue did not come forward until Intercontinental

made its objection to the retention of the Trustee and his counsel, after the appointment was made.

The affirmative duty to disclose any potential conflicts is clearcut. In *In re Micro–Time Management Systems, Inc.*, 102 B.R. 602 (Bankr.E.D.Mich.1989), a similar situation occurred. There, John C. Bohl was appointed Chapter 11 trustee for the debtor. The accounting firm with which he was associated was appointed to assist him. Bohl and the firm had previously done work for a corporation against which the debtor had several pending litigation matters. Although Bohl verbally informed the debtor's attorney of his connection with this adverse party, neither he nor his accounting firm disclosed the connection in their declarations of disinterestedness filed with the bankruptcy court. Denying Bohl and the firm certain fees and vacating their orders of appointment, the court rejected Bohl's explanation that "at no time did he believe that he had an actual conflict of interest or any interest adverse to [the debtor]." *Id.* at 604.

Bohl did not disclose his potentially disqualifying relationship with Comerica in either the trustee's declaration of disinterest or in the affidavit he submitted when he applied for approval to appoint Parker, Bohl & Associates as accountants for the trustee. Instead, Bohl swore in his affidavit that "To the best of my knowledge neither our firm nor any member thereof ... holds any interest adverse to the matters upon which we are to be engaged. Neither I nor any member of my firm has any relationship or interest in the above named debtor or any other parties of interest therein." These statements were false; Bohl had an ongoing relationship with Comerica.

"The statutory requirements for the appointment of a professional to serve a bankruptcy fiduciary are well known, and if not, are certainly easy to find and understand." *In re Gray*, 64 B.R. 505, 508 (Bankr.E.D.Mich.1986). Bohl has a great deal of experience, both as a bankruptcy trustee and as an accountant for the trustee. He should have known

about the disclosure requirements even though he was not represented by an attorney when he made his declaration of disinterest and when he applied to employ Parker, Bohl & Associates.

The fact that he questioned Schafer about whether his work for Comerica presented a conflict of interest indicates that Bohl was concerned about the issue. As the court stated in *In re Gray*, "If the applicant had any doubt on the point it should have disclosed the claim and sought a ruling." *Id.* at 508. Instead, the Court, the U.S. Trustee, and any other interested party was denied the opportunity to make an informed evaluation of the applicants' qualifications. And, as the U.S. Trustee stated at the hearing on this matter, Bohl and Parker, Bohl & Associates may not have been appointed if the appropriate disclosures had been made.

*Id.* at 608 (footnote omitted).

Like in the case of *In re Micro–Time Management Systems, Inc.*, by omitting any reference to the Diamond Vision representation in their disclosures, the Trustee and the firm deprived the court of the opportunity to address the disinterestedness issue at the earliest possible point in the process and created the impression that they were less than forthright. Obviously the firm considered its connection to the Diamond Vision case to be a potential problem, or it would not have initiated withdrawal proceedings. While its attempt to rid itself of any potential conflict of interest was a necessary and well-intentioned effort, the whole point of the disclosure requirements is to permit independent review of any potentially improper situation. *See also Gill v. Sierra Pac. Constr. Co. (In re Parkway Calabasas Ltd.)*, 89 B.R. 832, 835 n. 3 (Bankr.C.D.Cal.1988) (noting professional's affirmative duty under the Bankruptcy Code to disclose factors relevant to conflicts of interest).

Second, the Trustee and his firm failed to conduct a complete conflicts check for past and present clients adverse to Blinder, Robinson. During the hearing on Intercontinental's objection to the appointments, both the Trustee and the Davis, Graham & Stubbs partner responsible for the Diamond Vision case discussed their handling of this issue. The partner related that, before the appointment, he received a memorandum from the Trustee describing the disinterestedness standard under SIPA and requesting each partner to inform him whether he or she met that standard. On July 30, 1990, the partner had a conversation with the Trustee during which he disclosed that he was representing Diamond Vision against Blinder, Robinson. The Trustee then determined that the firm's representation of Diamond Vision did not affect the Trustee's or its disinterestedness under the statute. The Trustee further explained why he did not undertake a general conflicts check through the firm's computerized system listing past and present clients:

I believe that's what the disinterestedness memorandum was calculated to produce, was any conflicts which anyone felt existed, because the actual conflict language is included in the disinterestedness statute. However, I do [sic] not do a general conflicts check as Mr. Harris described with respect to the application to the computer for all of its knowledge on various people until claimants have filed, because as I suggested earlier, in a large law firm, there may be many creditors of Blinder, Robinson who are also clients of Davis, Graham & Stubbs. I can think of any number right now who may very well be clients of Davis, Graham and Stubbs who may turn out to be creditors; the telephone company or certain banks here in town and all kinds of things like that could turn out to be creditors of Blinder, Robinson. If they file claims, then of course we have to do that evaluation and then we have to have some independent review.

Tr. Vol. III at 44.

The Trustee's explanation that a full conflicts check was not conducted because of the vast number of potential conflicts which were likely to turn up and because he intended to undertake that search after the claims process had begun does not comport with his duty to make a reasonable

inquiry into potentially adverse interests. As the court explained in *In re Lee Way Holding Co.*, a firm's explanation that its failure to discover and disclose its representation of certain creditors of the estate because it did not undertake the cumbersome search of over 6,000 non-alphabetized entries in the claims listing is inadequate:

> The firm's honesty is unquestioned and commendable, but the Court finds that there is a fiduciary duty not only to make an honest disclosure (which was fulfilled) but to assume the admittedly significant burden of a search, sufficiently extensive in nature that these matters would be uncovered. This duty of "reasonable inquiry" is required by Bankr.Rule 9011(a). The complexities of modern litigation involving sizable law firms create new and complicated problems in the quest to avoid apparent conflicts of interest. Clearly, there should be someone in every law firm, charged with a knowledge of the firm's current and past clients, who could and should undertake at least a cursory examination of a creditors' register in cases such as at bar. Here, the fiduciary duty of diligence required that a member of the firm at least scan the six-hundred-plus pages of the creditors' register.

102 B.R. at 624. Although the search for conflicts in this case may yield many parties adverse to Blinder, Robinson, it is important to know the extent of all possible adverse connections at the earliest possible point. Moreover, the SIPA disinterestedness standard requires a *materially* adverse interest. Like the situation in *Lee Way Holding*, the resulting list could at least have been scanned to determine largest and primary adverse parties, with the disclosure that others of less magnitude have not been listed. I hasten to point out that magnitude, amount and materiality are not synonyms. While the amount involved might, in some cases, be determinative, more cases will be determined on the basis of communications made, knowledge derived from the representation and the length of the relationship involved. Davis, Graham & Stubbs has provided none of this information.

Third, and following from the above discussion, the Trustee himself made the determination that he and the firm were disinterested in connection with their representation of Diamond Vision. *See* Tr. Vol. III at 35. Such an exercise in *ipse dixit* is not permissible. That the Trustee internalized this decision, rather than presenting the relevant information to the court and other parties for an objective determination of disinterestedness suggests that the Trustee is selective about the information he provides to the court and fails to acknowledge the high fiduciary standard to which he must abide to the point of punctilio. *See Securities & Exchange Comm'n v. Schreiber Bosse & Co.*, 368 F.Supp. at 26 (" '[t]he trustee must be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters' ").

### III. *Conclusion.*

The appointment of disinterested Trustee and counsel under SIPA is an issue of fundamental fairness meriting the consideration of this appeal on an interlocutory basis. While both the Trustee and the bankruptcy court argue that Davis, Graham & Stubbs' representation of one potential creditor is too tenuous to justify disqualification, it is clear that the disinterestedness standard is a strict one, and even the appearance of impropriety must be avoided. Nevertheless, given the exigencies of modern legal practice, the firm's subsequent withdrawal from the Diamond Vision case, and the disruption that would be caused by replacement of the Trustee, the bankruptcy court's ultimate conclusion that the Trustee and the firm would not be disqualified will be upheld. I caution, however, that early, full disclosure of all potentially adverse interests should be a principle of first magnitude in all such cases and that the decision regarding the degree of conflict and disinterest should be made by the judge based upon such full disclosure and the responses from interested parties which would ensue therefrom. While the decision of the bankruptcy court is affirmed for the reasons stated in this opin-

ion, the appeal is most certainly not without merit.

## APPENDIX A

United States District Court

for the District of Colorado in Bankruptcy

Bankruptcy Case No. 90–11654–SBB (Chapter 11)

Adversary Proceeding No. 90–1170–SBB (SIPA)

Filed Sept. 6, 1990

In re: Blinder, Robinson & Company, Inc., Debtor.

Securities Investor Protection Corporation, Plaintiff,

v.

Blinder, Robinson & Company, Inc., Defendant.

ORDER DENYING INTERCONTINENTAL ENTERPRISES, INC.'S OBJECTION TO RETENTION IN OFFICE OF TRUSTEE AND ATTORNEY FOR TRUSTEE

THIS MATTER is before the Court upon "Intercontinental Enterprises, Inc.'s Objection to Retention in Office of Trustee and Attorney for Trustee" filed August 30, 1990. A hearing was held in accordance with the requirements of 15 U.S.C. § 78eee(b)(6)(B) on September 4, 1990.

Intercontinental Enterprises, Inc. ("Intercontinental") asserts in support of its Objection that, prior to the appointment of Glen E. Keller, Jr. ("Keller") as Trustee and Davis, Graham & Stubbs ("DGS") as counsel to the Trustee, DGS, of which Keller is a partner, represented Diamond Vision, Inc. ("Diamond"), a creditor of the Debtor herein, in a lawsuit against the Debtor which is presently pending in the Denver District Court. Neither Keller nor DGS dispute the facts as alleged by Intercontinental. Counsel for DGS submits, however, that the firm has since been released from all representation of Diamond, but has not yet made application for leave to withdraw in the state court pursuant to Rule 121, C.R.Civ.P.

Intercontinental relies primarily upon the case of *Matter of Perry, Adams & Lewis Securities, Inc.*, 5 B.R. 63 (Bankr.W.D.Mo. 1980) wherein the court disqualified counsel for the trustee when there existed a prospect of possible litigation between the debtor and a bank which was also represented by the same counsel. The instant case is factually distinguishable. In *Perry, Adams & Lewis Securities*, the law firm acted as general counsel for the bank, one of the firm's partners was chairman of the bank's board of directors, and the member of the firm who would represent the trustee was concurrently representing the bank in two other pending proceedings. Such an intertwined, conflict-laden relationship is not before this Court. Moreover, DGS has removed all possibility of future conflicts by completely extricating itself from representation of Diamond.

This proceeding is principally governed by the Securities Investor Protection Act of 1970 ("SIPA") which provides that "[n]o person may be appointed to serve as trustee or attorney for the trustee if such person is not disinterested...." 15 U.S.C. § 78eee(b)(3). SIPA further sets forth standards for determining disinterestedness which state, in relevant part, as follows:

[A] person shall not be deemed disinterested if—

. . . . .

(iv) it appears that such person has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such an underwriter, or for any other reason, an interest materially adverse to the interests of any class of creditors (including customers) or stockholders....

15 U.S.C. § 78eee(b)(6)(A). (Emphasis added.)

The plain language of this "catchall" provision requires a showing that an interest be held which is materially adverse to the interests of one or more of the enumerated classes. Intercontinental has failed to show more than merely a speculative, potential interest which conceivably might be

deemed adverse, but unquestionably is not a "materially adverse interest."

Further, the Trustee advises that measures will be implemented to safeguard against the possibility of any future conflicts of interest which could arise in the event clients or former clients of DGS constitute one or more of the approximately 200,000 customer and creditor claimants of the Debtor. In the event that Diamond or any of the firm's clients file proofs of claim against the Debtor in the present SIPA action, special outside counsel will be retained by the Trustee to evaluate the claim and take further action, if and where appropriate. This safeguard, coupled with the firm's complete release from further representation of Diamond, eliminates any material adverse interest, if indeed, it was present in the first place.

Intercontinental further argues that the cases of *In re Ginco, Inc.*, 105 B.R. 620 (D.Colo.1988) and *In re Amdura Corp.*, 1990 WL 98482 [121 B.R. 862] (Bankr. D.Colo.1990), compel disqualification of Keller and/or DGS as the attorney for the Trustee. In *Ginco,* the court held that the bankruptcy court must "adhere to the literal language of Section 327(a) ..." and disallow employment of counsel where conflicts of interest or potential conflicts of interest were extant. *In re Ginco, Inc.* has been followed and refined, further, by Chief United States District Court Judge Sherman Finesilver in *In re W.V.S. Investment Joint Venture* and *Tri-Crown Corp.*, Civil Action No.'s 89–F–331 and 89–F–517, dated January 4, 1990 [1990 WL 191864], as well as by this Bankruptcy Court in *In re Smartt* and *Smartt Construction Co.*, [132] B.R. [765], Case No.'s 88–B–17915–E and Case No. 88–B–17916–E in an opinion released August 14, 1990.[1]

This Court believes that the concepts embodied in and the principles enunciated in *In re W.V.S. Investment Joint Venture, Tri-Crown Corp.*, and *In re Smartt* and *Smartt Construction Co.*, support the con-

clusions of this Court that (1) the Trustee and the Trustee's counsel do not have or hold "an interest materially adverse to the interests of any class of creditors [including customers] or stockholders ...," (2) that there is no actual conflict of interest and, (3) significantly, that there does not exist an appearance of impropriety sufficient to justify disqualification of Keller as Trustee or DGS as attorney for the Trustee in this case.

The Court concludes that Keller and DGS are disinterested and qualify for appointment as Trustee and attorney for the Trustee pursuant to 15 U.S.C. § 78eee(b)(3).

For the reasons set forth above, it is

ORDERED that the Trustee and Davis, Graham & Stubbs are deemed "disinterested" pursuant to the terms and provisions of 15 U.S.C. §§ 78eee(b)(3) and (b)(6).

IT IS FURTHER ORDERED that Intercontinental Enterprises, Inc.'s Objection to Retention in Office of Trustee and Attorney for Trustee is hereby DENIED.

Dated this 6 day of September, 1990.
 BY THE COURT:
 /s/Sidney B. Brooks
 Sidney B. Brooks,
 United States Bankruptcy Judge

### ORDER ON MOTION FOR RECONSIDERATION AND ORDER MODIFYING MEMORANDUM OPINION AND ORDER OF JULY 1, 1991

This matter is before me on the motion of Intercontinental Enterprises, Inc. to reconsider my order on the merits of this appeal, entered on July 1, 1991. Intercontinental argues that there was no evidence in the record to support my finding that removal of the trustee for Blinder, Robinson & Co., Inc., Glenn E. Keller, Jr. ("Trustee"), "would be a major disruption" to the ongoing liquidation proceedings. *See* July 1, 1991 Order at 881. Intercontinental requests I withdraw the reference and hold an evidentiary hearing on whether it would be disruptive to replace the Trustee. In

---

1. Not insignificantly, Chief Bankruptcy Judge Charles Matheson characterized *In re Ginco* as one which reflects that "this district has adopted perhaps the most stringent position under section 327(a) of any court in the country." *In re Ginco, supra* at p. 5.

support of this motion, Intercontinental includes an offer of proof to substantiate its claim that removal of the Trustee is warranted.

"Courts have distilled the following three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Shields v. Shetler,* 120 F.R.D. 123, 126 (D.Colo.1988). Thus, a motion to reconsider is proper when the court "has patently misunderstood a party" or "has made a mistake, not of reasoning, but of apprehension," or when there has been a "significant change in the law or facts since submission to the Court." *See United States v. Ibarra,* 920 F.2d 702, 706 n. 3 (10th Cir.1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983)), *petition for cert. filed,* No. 90–1718 (May 7, 1991). A motion which merely reiterates arguments already considered or raises new matters beyond the scope of the party's original position is improper. *See Shields,* 120 F.R.D. at 126; *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983), *aff'd,* 770 F.2d 98 (7th Cir.1985).

Here, Intercontinental contends that I erred as a matter of law because there is no evidence in the record to support my conclusion that a change in the identity of the Trustee would be detrimental to these liquidation proceedings. However, the court's own records support this conclusion. At the time of my July 1 ruling, there were four appeals pending before me which related to the liquidation of Blinder, Robinson. These appeals will likely involve difficult, if not novel, factual and legal issues, with which the Trustee and his counsel have by now become intimately familiar. Based on the pleadings and record filed in each appeal, I am also aware that there are a vast number of customer and creditor claimants of Blinder, Robinson, that the claims satisfaction process will be complex, and that there are significant and hotly contested adversary proceedings contemplated or currently proceeding against principals of the firm. I may properly take judicial notice of these matters. *See St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir.1979).

Notwithstanding the above, and accepting that I function in this case as an appellate court and not as a trial court, I grant in part Intercontinental's motion and remand this matter to the bankruptcy court for an evidentiary hearing. In doing so, I stress that allegations of misconduct by the Trustee after his appointment have no bearing on whether his removal would be disruptive to the liquidation proceedings. They are appropriately raised in the context of a motion to disqualify, which must be brought in the first instance in the bankruptcy court, not here.

Accordingly, the motion for reconsideration is GRANTED in part and the matter is REMANDED to the bankruptcy court for an evidentiary hearing on whether it would be unduly disruptive to liquidation proceedings to replace the Trustee.

IT IS FURTHER ORDERED that my memorandum opinion and order of July 1, 1991 is modified to the extent necessary to make it consistent with this order; this opinion on motion for reconsideration is ordered annexed to the July 1, 1991 order and both are hereby ordered published.