**In the Matter of PERRY, ADAMS & LEWIS SECURITIES, INC., Debtor.**

**Bankruptcy No. 80–01237–3.**

United States Bankruptcy Court, W. D. Missouri, W. D.

May 20, 1980.

Daniel M. Dibble, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for trustee.

George H. Clay, Kansas City, Mo., Trustee.

A. E. Margolin, F. Philip Kirwan, Norman M. Arnell, Kansas City, Mo., Thomas J. Guilfoil, David W. Harlan, St. Louis, Mo., for Traders Bank.

Robert M. Modeer, Kansas City, Mo., for debtor.

Theodore H. Focht, Gen. Counsel, Kevin H. Bell, Asst. Gen. Counsel, Washington, D. C., for Securities Investor Protection Corp.

Debra J. Schnebel, Chicago, Ill., Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., for Securities and Exchange Commission.

ORDER DISQUALIFYING THE LAW FIRM OF LATHROP, KOONTZ, RIGHTER, CLAGETT, PARKER & NORQUIST TO ACT AS COUNSEL FOR THE TRUSTEE HEREIN

DENNIS J. STEWART, Bankruptcy Judge.

The Traders Bank has filed its objection herein to the continuation of Lathrop, Koontz, Righter, Clagett, Parker and Norquist as counsel for the trustee herein. A hearing was held, in accordance with the requirements of section 78eee(b)(6)(B), Title 15, United States Code, on May 16, 1980. Therein, the objecting party presented its factual contentions which are materially to the effect that "(t)he funds to retire the bonds (of Public Water Supply District No.

7, Jefferson County, Missouri) were and are to be derived solely from the revenues of the Water District. By its own admission, Columbia Union (National Bank, the paying agent for the bonds) has not received the funds it used to pay interest and principal from the Water District, but rather from the Debtor. The most recent payments became due in March 1980. Knowing these circumstances and without disclosing them, Columbia Union has dispersed interest and principal payments as they became due, thereby creating an impression in the market as to the bonds' value and the ability of the Water District to retire them."

It is not denied by the respondent counsel that the allegations thus made provide the prospect of possible litigation between the debtor and the Columbia Union National Bank. Nor is it denied that the challenged law firm is general counsel for the Columbia Union National Bank; that one of the firm's partners is chairman of its board of directors; and that the member of the firm who would represent the trustee generally in these proceedings is currently also representing the Columbia Union National Bank in two pending proceedings.

Thus, admittedly, the respondent law firm does not deny that there exists the great potential for litigation between the debtor and the Columbia Union National Bank and that, further, it would be an actual conflict of interest for a member of its law firm to represent the debtor in such litigation.

Short, however, of the materialization of that actual litigation, the respondent law firm—joined in this regard by the Securities Investor Protection Corporation—contends that measures may be taken to safeguard against any real conflict of interest. Thus, it is averred that Columbia Union will employ counsel other than the respondent in all of its future litigation and dealings with the debtor. Further, it is said that "if the trustee determines it is appropriate for him to make an investigation into the facts . . . for the purpose of determining whether or not the trustee should pursue a claim against Columbia Union National

Bank and Trust Company, he will, upon SIPC's designation and with the permission and consent of this Court, employ separate counsel for such purpose and neither Daniel M. Dibble nor any partner or associate in this law firm will in any way participate in the investigation of said potential claim or in the decision made as to whether or not said claim should be pursued."

Now that the Traders Bank, however, has firmly and clearly made the allegations which, if true, would require the trustee to prosecute a claim on behalf of the debtor against the bank, it is no longer sufficient to advert to the *possibility* of the appointment of special counsel to investigate the matter. For failure to investigate the potential merits of the claim or failure to prosecute the claim after investigation will, one as well as the other, give rise to the *appearance* of impropriety, even if none exists in reality. Neither party to this matter denies that the avoidance of a real appearance of impropriety is of chief concern to a court of bankruptcy in an instance like that at bar and that it is a disservice to counsel himself, as well as to the others affected, to require him to continue in the face of such a real appearance. As was noted in the case relied upon by the petitioning objector, *In re Chicago Rapid Transit Co.*, 93 F.2d 832, 838 (7th Cir. 1937), it is not sufficient that the trustee and his counsel actually be disinterested; the appearance of disinterestedness must also be avoided: "It becomes the duty of the trustee and of his attorneys not only to be impartial and free from the influence of any secured holder, but the other security holders must have faith and confidence in their impartiality and independence." See also *Handelman v. Weiss*, 368 F.Supp. 258, 263 (S.D.N.Y.1973), holding generally that, in matters under the Securities Investor Protection Act, the securityholders must be protected from the "appearance of impropriety" in permitting counsel, albeit during different time periods, alternately to represent the debtor's trustee and a party with an adverse interest.

Nor can it be said that the immediate selection by the trustee of special counsel to undertake forthwith the investigation of the potential claim against Columbia Union National Bank would obviate any appearance of impropriety. For, as the objecting party has noted and as has been admitted in the testimony of the trustee, the respondent has had access to date to the books and records of the debtor, including possibly those which would bear upon the potential claim against Columbia Union National Bank. While there is no reason to believe that any of the contents of these books and records have been imparted to counsel now retained by the bank to deal with the debtor, any unusually canny defense by the bank would almost certainly meet with creditor suspicion of the imparting of crucial information. In fact, the interposition of even a proficient and successful defense would be likely to encounter the same suspicion and, perhaps, even formal accusations. It would be unfair, therefore, to counsel himself to require him to suffer such when it can be obviated by the trustee's selection of counsel without any inherent conflict of interest. For it is only such a counsel who can be thought to be sufficiently zealous in his representation of the debtor's trustee that he would seek to take remedial measures against any past outflow of information to the benefit of the bank, even if those remedial measures had to be against the respondent law firm. This is not to say that any such measures must or will be taken, but only that the selection of counsel unrelated to the respondent law firm is now necessary to protect both the creditors and the current counsel for the trustee.

Finally, it cannot be said that this consideration of a potential conflict as grounds for disqualification of counsel who is admirably competent and of unimpeached and unimpeachable character constitutes a "spasm reaction to (a) situation capable of appearing improper to the jaundiced cynic," such as is denounced in *State of Arkansas v. Dean Foods Products Company, Inc.*, 605 F.2d 380, 383 (8th Cir. 1979). Rather, when the averments now made by the objecting creditor are firm and definite, it appears, as noted above, the measure hereby taken is necessary to protect counsel as well as the creditors themselves. And it is not possible to protect both through the intermediate prophylactic measures advocated by the brief filed herein by the Securities Investor Protection Corporation. As counsel for the objecting party points out, the introduction of those intermediate measures only emphasizes the importance and immediacy of the potential conflict of interest. Further, they constitute impediments against which counsel for the trustee should not have to struggle in his necessary mission of expeditiously and justly aiding in the administration of the debtor's estate. It is seemingly to such situations, as fraught with peril for counsel as they are for the other interested parties, that the courts have spoken in pointing out generally that courts are "to strictly enforce the Code of Professional Responsibility," *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 991, 993 (8th Cir. 1978), and that, "in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). Nor does this court see any reason for trimming the broad language of the governing section, 78eee(b)(6)(A)(iv), which, as pertinent, would disqualify a trustee's counsel for any "interest materially adverse to the interests of any class of creditors (including customers) or stockholders."

In this matter and to this effect, the court has acted only with the greatest reluctance, realizing that it will be difficult for the trustee again to retain another counsel with the acumen and integrity of counsel who must, under the foregoing considerations, now be disqualified. But the action hereby taken is as necessary under those considerations as it is regrettable.

It is therefore, for the foregoing reasons,

ORDERED that the law firm of Lathrop, Koontz, Righter, Clagett, Parker & Norquist be, and it is hereby, disqualified to act as counsel for the trustee herein.