In re The BENNETT FUNDING GROUP, INC., Debtors.

Bankruptcy No. 96–61376.

United States Bankruptcy Court, N.D. New York.

Sept. 2, 1998.

Simpson, Thacher & Bartlett (George Newcombe, of counsel), New York City, for § 1104 Trustee.

Wasserman, Jurista & Stolz (Harry Gutfleish, of counsel), Millburn, NJ, for Official Committee Unsecured Creditors.

Guy Van Baalen, Utica, NY, for Assistant U.S. Trustee.

Bond, Schoeneck & King, LLP (James Dati, of counsel), Syracuse, NY, for The Herald Company.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is the Sixth Application for Interim Compensation, Provisional Monthly Payments and Provisional Payments of Expenses ("Sixth Application")

filed by Richard C. Breeden as chapter 11 trustee ("Trustee" or "Breeden") on April 15, 1998. The Sixth Application was initially heard on May 21, 1998, and adjourned for further argument to June 11, 1998, June 25, 1998 and July 16, 1998.

Opposition to the Sixth Application was interposed by the United States Trustee ("UST") on May 18, 1998. Among other things, the UST expressed concerns with the disclosure by the Trustee of his contractual arrangement with the accounting firm of Deloitte & Touche (USA), LLP ("Deloitte").[1]

At the initial hearing on May 21, 1998, the Court indicated that it would withhold its approval of the Sixth Application until it had an opportunity to review a supplemental application which it required the Trustee to file outlining the contractual arrangements with Deloitte. On June 9, 1998, the Trustee filed what is identified as his Fourth Supplemental Affidavit, in which he acknowledged having entered into the Retainer Agreement to "provide consulting services to Deloitte concerning regulatory and other matters affecting domestic and international capital markets and the financial services industry generally. My consulting services may also include such legislative, regulatory, administrative or business issues as to which Deloitte may seek my advice and counsel and that are reasonably acceptable to me." *See* Trustee's Fourth Supplemental Affidavit at ¶ 8. A copy of the Retainer Agreement, however, is not attached to the Trustee's Fourth Supplemental Affidavit.

On June 11, 1998, the Court heard further argument concerning the Trustee's Sixth Application, in particular his retention by Deloitte. The Court agreed to again adjourn the hearing on the Sixth Application in order to allow the UST and counsel for the Unsecured Creditors Committee ("Committee") to have an opportunity to respond to the Trustee's Fourth Supplemental Affidavit filed with the Court two days prior to the hearing.

The Court directed the Trustee to provide a copy of the Retainer Agreement to it for *in camera* review. Counsel for The Herald Company, the publisher of the Syracuse, New York, newspapers, requested that the Retainer Agreement be made a matter of public record. The UST and the Committee also expressed the view that the Retainer Agreement should be made available to them as well. The Court indicated that anyone objecting to the submission of the Retainer Agreement to the Court for *in camera* review, file papers prior to the adjourned hearing date of June 25, 1998.

On June 22, 1998, the Trustee filed with the Court a copy of the Retainer Agreement for its *in camera* review. At the hearing on June 25, 1998, the parties agreed to again adjourn the matter to July 16, 1998, in order for them to have time to respond to the request by The Herald Company, dated June 18, 1998, that the Retainer Agreement be made available to it based on a common law and First Amendment right of access. The letter requesting access to the Retainer Agreement was filed with the Court on June 19, 1998, but was not served on any of the parties appearing at the prior hearing on June 11th.

At the June 25th hearing, the UST expressed concerns regarding not only information presumably in the Retainer Agreement, but also the fact that it did not appear that the Trustee had performed a conflicts check with respect to Deloitte and its clients.

On July 14, 1998, the Trustee filed what is identified as his "Fourth Supplemental Affidavit" but actually appears to be his "Fifth" in view of the fact that he filed the "Fourth" on June 9, 1998. At the hearing on July 16, 1998, the Court again heard oral argument by the parties, including counsel for the Committee and counsel for The Herald Company. At the conclusion of the hearing, the Court afforded the parties an opportunity to file additional memoranda of law on the following matters: (1) the substantive objec-

---

1. The disclosure was not made part of the Sixth Application. Instead, the Trustee filed his Third Supplemental Affidavit on April 16, 1998, in which he indicates, *inter alia*, that he entered into an agreement ("Retainer Agreement") with Deloitte allegedly in early February to "make

myself available from time to time on a limited basis to consult to Deloitte on issues concerning capital markets, regulatory matters, legislative issues and other issues unrelated to the Bennett bankruptcy or to bankruptcy matters generally." *See* Trustee's Third Supplemental Affidavit at ¶ 3.

tions to the Trustee's Sixth Application, (2) the alleged conflict of interest arising as a result of the Trustee's employment with Deloitte, and (3) the public's right of access to the Retainer Agreement.[2] The matters were submitted for decision on August 6, 1998. Only the second and third matters will be addressed in the Decision herein; the substantive issues raised in connection with the Sixth Application will be addressed by the Court in a separate decision.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (2)(A).

## FACTS

On March 29, 1996, The Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corporation ("BRC"), Bennett Receivables Corporation II ("BRC–II"), Bennett Management & Development Corporation ("BMDC") filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code. The Trustee was appointed trustee for each of them on April 18, 1996. On April 19, 1996, Resort Service Company, Inc. ("RSC") and American Marine International, Ltd. ("AMI") filed petitions for relief under chapter 11, and on April 25, 1996, an involuntary chapter 11 case was filed against Aloha Capital Corporation ("Aloha"). The Processing Center, Inc. ("TPC") filed a voluntary chapter 11 petition on April 26, 1996, and on May 10, 1996, the Court entered an order for relief against Aloha. The Trustee's appointment for AMI, RSC, TPC and Aloha was approved by the Court on May 15, 1996. By Order dated July 25, 1997, the Court substantively consolidated all of the Debtors' estates ("Consolidated Estate").

At the time of his appointment as trustee, Breeden was employed as a partner in the accounting firm of Coopers & Lybrand.

However, on October 1, 1996, Breeden resigned from his position with Coopers & Lybrand. The Trustee is also a former Chairman of the Securities and Exchange Commission.

According to the Trustee's Fourth Supplemental Affidavit, since February 1, 1998, he has devoted approximately 2½ hours to work for Deloitte. The Trustee further indicates that his obligation to perform services in connection with the Retainer Agreement is limited to 32 hours per month or as the Trustee notes, "the [e]quivalent to working on Saturdays during a particular month." *See* Fourth Supplemental Affidavit at ¶ 11, n. 2. The Trustee also states that "[i]n no event am I obligated to do anything for Deloitte that in my judgment is not consistent with my time commitments to the Bennett case, or that may otherwise be deemed by me to impair in any way my performance in the primary assignment." *See id.* at ¶ 14. In response to concerns over the Retainer Agreement, the Trustee indicates his willingness "to provide a confidential report, filed under seal with the Court, of the approximate time, if any, devoted to Deloitte under the Retainer Agreement in each quarterly fee period." *See id.* at ¶ 17.

With respect to his retention by Deloitte, the Trustee indicates that a conflict check was performed at his request to determine the extent of Deloitte's involvement with parties active in the consolidated case as identified in Schedule "A" attached to the Trustee's "Fifth" Supplemental Affidavit. Trustee's counsel limited its search to publicly available information since Deloitte advised the Trustee that "it considers its client relationships with non-public companies to be highly proprietary, and that it does not ever disclose such relationships with its clients." *See* Trustee's "Fifth" Supplemental Affidavit at ¶ 3.

The search reveals that Deloitte acts as independent auditor to A.G. Edwards, Inc., identified in Schedule "A" as a "broker,"[3]

2. The Committee also raised a question concerning the fees of Trustee's counsel, Simpson, Thacher & Bartlett ("STB"), incurred in connection with the Trustee's employment with Deloitte and the ancillary issues raised by it. The Court determined at the hearing that it would be more

appropriate to hold that particular matter in abeyance until it was asked to approve the fee application of STB in connection with those services.

3. Although identified as a broker, there is no indication that A.G. Edwards has been sued by

and to American Gaming & Entertainment, Ltd. ("AGEL"), which, according to the Trustee, is a publicly owned holding company of gaming assets. Shamrock Holdings Group, Inc. ("Shamrock"), a subsidiary of the Consolidated Estate and also in bankruptcy, allegedly owns 40% of AGEL's common stock and 100% of AGEL's Series A, C, D & E preferred stock. According to the Trustee, AGEL currently owes approximately $65 million to Shamrock. The Trustee indicates that an adversary proceeding has been commenced against AGEL seeking the recovery of approximately $70 million. *See* Trustee's Supplemental Memorandum of Law at 2.

### DISCUSSION

*Trustee's Employment by Deloitte*

"Disclosure" is at the heart of the matters now before the Court. The Herald Company contends that the Retainer Agreement should be disclosed based on the common-law and First Amendment right of access. The UST asserts that without disclosure by Deloitte of its private clients it is not possible to determine whether there is a potential for actual conflict for Breeden in representing the Consolidated Estate and in acting as a consultant to Deloitte. The UST also raises concerns over the Trustee's piecemeal disclosure of information in connection with his employment by Deloitte, as evidenced by three separate affidavits filed by the Trustee in an effort to clarify his role as a consultant to Deloitte without the need for making the actual Retainer Agreement public. Indeed, it is the Trustee's position with respect to disclosure of his retention by Deloitte that

> I did not seek advance approval for this agreement because I did not know of any legal requirements other than a notice filing, which I made. Given the very limited nature of the Retainer Agreement and my expectation that the actual time devoted to this agreement would be minuscule, and did not in any event result in *any* reduc-

the Trustee except as trustee for an individual investor. *See id.* at n. 1 and Trustee's Supplemental Memorandum of Law, filed Aug. 6, 1998 at 2.

4. Although *Granite Partners* addressed the employment of trustee's counsel, the case law and

tion in my actual hours devoted to the Bennett case, I did not view it as a particularly significant event.

*See* Fourth Supplemental Affidavit at ¶ 17. Indeed, at the hearing on May 21, 1998, when the relationship with Deloitte first came to light and the Court questioned him concerning the Trustee's delay in disclosing his arrangement with Deloitte, Trustee's counsel stated, "Mr. Breeden knows what the scope of the job is, he doesn't believe there's any conflict whatsoever [with] his time spent on the estate." *See* Transcript of May 21, 1998 hearing at 22.

▆▆▆ None of the parties dispute the Trustee's right to engage in other employment. It is also evident from the supplemental affidavits by the Trustee that the time commitment made to Deloitte is limited and should not interfere with the time spent on matters of the Consolidated Estate. However, § 1104(d) of the Code (11 U.S.C. §§ 101–1330) ("Code") requires that a trustee appointed thereunder be a "disinterested person." Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") requires the Trustee to disclose any connections Deloitte might have with the Debtors, creditors and any other party in interest. *See In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr.S.D.N.Y.1998).[4] The disclosure requirements continue to apply throughout the case. *See id.* (citations omitted). Furthermore, the Court is of the opinion that it is critical to the integrity of the bankruptcy process that disclosure of material facts which relate to disinterestedness be timely and thorough. *See In re Martin*, 817 F.2d 175, 182 (1st Cir.1987) (stating that "[t]here must be at a minimum full and timely disclosure of the details of any given arrangement. *** he has a responsibility to leave no reasonable stone unturned in bringing the matter to a head at the earliest practical moment."); *see also In re Blinder, Robinson &*

analysis relating to professional persons is no less applicable to chapter 11 trustees on the issue of disinterestedness. *See In re Micro–Time Management Systems, Inc.*, 102 B.R. 602, 606 (Bankr. E.D.Mich.1989).

*Co., Inc.,* 131 B.R. 872, 882 (D.Colo.1991) (noting that "the Trustee and the firm deprived the court of the opportunity to address the disinterestedness issue at the earliest possible point in the process and created the impression that they were less than forthright.").[5]

In this case, the Trustee's initial disclosure was neither timely nor thorough. Over two and one half months elapsed before he filed his Third Supplemental Affidavit on April 16, 1998, revealing his retention by Deloitte. The limited information contained therein necessitated his filing not only one but two more supplemental affidavits and even after the "Fifth" Supplemental Affidavit, the Court and the parties remain "in the dark" concerning conflicts that may exist with respect to Deloitte's private clients.

■ The Trustee appears to believe that the Court and the parties should simply rely on him as a fiduciary to make an independent determination that he remains disinterested. Yet, this is not an appropriate determination for the Trustee to make.

> Such an exercise in *ipse dixit* is not permissible. That the Trustee internalized this decision, rather than presenting the relevant information to the court and other parties for an objective determination of disinterestedness suggests that the Trustee is selective about the information he provides to the court and fails to acknowledge the high fiduciary standard to which he must abide to the point of punctilio.

*Blinder, Robinson & Co.,* 131 B.R. at 883, citing *Securities & Exchange Comm'n v. Schreiber Bosse & Co.,* 368 F.Supp. 24, 26 (N.D.Ohio 1973); *see also Granite Partners,* 219 B.R. at 35 (noting that a professional "cannot usurp the court's function by choosing, *ipse dixit,* which connections impact disinterestedness and which do not."). It is the Court that is "in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *Martin,* 817 F.2d at 182.

■ Having said that, the Court must evaluate the facts and circumstances presented by the Trustee in determining whether, as the UST suggests, Breeden should resign either from his role as trustee of the Consolidated Estate, or from his position with Deloitte. The Trustee is required to disclose *all* facts that may have a bearing on his disinterestedness. *See Granite Partners,* 219 B.R. at 35. Unfortunately, the Trustee has failed to provide the Court with sufficient information to make a determination concerning his disinterestedness. The limited inquiry made on behalf of the Trustee revealed a relationship between Deloitte and AGEL, an entity being sued by the Trustee for in excess of $70 million. Whether this creates a potential for an actual conflict need not be addressed herein, however. Rather, it is the Trustee's explanation that a full conflicts check was not possible because of Deloitte's policy with respect to its private clients that raises concerns of the Court. The fact of the matter is that the Court is left without answers to whether, in addition to A.G. Edwards and AGEL, any of Deloitte's private clients have ties to the case and to what extent. The Trustee argues that his services are being rendered on behalf of Deloitte, and that Deloitte is neither a creditor nor a party in interest in the case. The question of "whether a professional [in this case, the Trustee] has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one,'" *In re Leslie Fay Companies, Inc.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y.1994) (quoting *In re Martin,* 817 F.2d at 180–81), cannot be addressed in a vacuum without the benefit of knowing whether Deloitte numbers among its private clients any of the creditors of the estate or defendants in any of the thousands of adversary proceedings commenced by the Trustee in this case.

---

**5.** The court in *Blinder* addressed the retention of a trustee and his counsel pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa–7811. The court noted that "[t]he strictness with which the SIPA disinterestedness standard is viewed is echoed in decisions construing the similar requirements under § 101(14) of the Bankruptcy Code...." *Blinder, Robinson & Co.,* 131 B.R. at 878 and n. 3.

Based on the Trustee's inability to provide a comprehensive conflicts check of Deloitte's clients, the Court concludes that the Trustee should apprise the Court of his decision to either resign his position as Trustee of the Consolidated Estate, or as consultant to Deloitte effective *nunc pro tunc* to the date his employment with Deloitte became effective.[6] The Court wishes to emphasize that it makes no finding herein that the Trustee's position as consultant to Deloitte constitutes a materially adverse interest to that of the Consolidated Estate.

### Right of Access to the Retention Agreement

■ Courts in this country have long recognized the public's right of access to judicial records. *See, e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). The strong presumption favoring public access is intended to promote confidence in the judicial process by providing the public with a means to monitor the functioning of our courts. *See In re Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995). Congress manifested an intent to preserve this right in the context of bankruptcy proceedings by enacting Code 107(a), which provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). However, the right of the public is not without limitation. *See In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir.1994). Indeed, Code § 107(b) sets forth certain statutory exceptions whereby the court, at the request of a party in interest, is required to protect access to trade secrets or confidential research, development or commercial information. If it is determined that the information sought to be disclosed fits into any of the specified categories, the Court has no discretion in denying access to it. *See id.* If the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion. *See Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312. It requires the

Court to examine the relevant facts and circumstances and then to balance the interests of the party opposing disclosure with that of the public. *See id.* at 602, 98 S.Ct. at 1314.

■ The Trustee, in this case, points out that the Retainer Agreement, although provided to the Court for *in camera* review, has not actually been filed and, therefore, is not part of the public record. Accordingly, the Trustee asserts that neither Code § 107, the common law nor the First Amendment are applicable. In response, counsel representing The Herald Company directs the Court to Fed.R.Bankr.P. 5005(a) which states that "[t]he judge of the court may permit the papers to be filed with the judge." It is the position of The Herald Company that by providing the Court with a copy of the Retainer Agreement for review it was "filed with the judge." However, a further reading of the Rule and the comments to it makes it clear that "filing with the judge" is intended to address the situation in which the Clerk's Office is not open and "time may be of the essence or a deadline or bar date may require the parties to file directly with a bankruptcy judge of the court ... rather that wait until the Clerk's Office opens for business...." *See* Editor's Comment to Fed.R.Bankr.P. 5005. In this case, there was no statutory requirement that the Retainer Agreement be filed and there certainly was no deadline or bar date for "filing" the Retainer Agreement with the Clerk's Office that necessitated its submission to the Court. Rather, the Court required that the Trustee provide it with a copy of the Retainer Agreement in order to ascertain the nature and extent of the Trustee's commitment to Deloitte.

The fact that the Retainer Agreement has not been formally filed with the Clerk's Office does not mean that it is not a judicial record or document. The Court's inquiry, in light of the policy underlying the public's right of access, namely that the public have confidence in the administration of justice, must focus on whether the Retainer Agreement was "relevant to the performance of the judicial function and useful in the judicial

---

**6.** Making resignation from Deloitte effective as of the date of this Order, in the opinion of the court, might encourage parties to delay making the necessary disclosures discussed herein.

process in order for it to be designated a judicial document." *See United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995).

Because the Court has directed that the Trustee either resign his position as Trustee of the Consolidated Estate or his consultant position with Deloitte based on his inability to perform a comprehensive conflicts check to establish his continued disinterestedness, the terms of the Retainer Agreement are no longer relevant to these proceedings and to the decision herein and need not be considered by the Court.

Based on the foregoing, it his hereby

ORDERED that the Trustee shall apprise the Court within 30 days of the date of this Order whether he intends to resign his position as Trustee of the Consolidated Estates or to resign his position as consultant for Deloitte, and it is further

ORDERED that the request of The Herald Company, as well as that of the UST and the Committee, for access to the Retainer Agreement is denied without prejudice.